EULALIE NORÈS and others *v.* ETIENNE CARRABY, Tutor, and others.

Personal property of the parties before marriage, did not, under the Spanish law, become the property of the community, in consequence of the neglect to establish the amount at the time of the marriage.

Every thing left at the dissolution of the community is presumed to be common, unless it be proved what each spouse brought in. This proof is not required to be by an authentic instrument contemporaneous with the marriage ; any legal evidence is admissible. The community, as established by the Spanish law, and the code of 1808, remains unchanged in this respect. Whatever either party brought in, is to be deducted from the mass, and the balance alone divided. It will not suffice to show, that either party was possessed of particular property, or had a sum of money previous to the marriage ; it must be shown, that it belonged to him at the time of its celebration. An authentic act passed between the parties to a marriage, will not be conclusive against third persons, as to the property possessed by either at the time of such marriage.

Where in an action against a tutor for a settlement of his accounts, plaintiffs moved that the account rendered by the tutor should be homologated so far as it was not opposed by certain creditors, they cannot be permitted afterwards to allege errors therein. By provoking the homologation, plaintiffs waived their right to oppose the account.

Neither the inventory taken after the death of a wife, nor a statement of accounts between the husband and a third person, are evidence against the creditors of the husband, either of the existence, or payment of a debt alleged to be due to the community.

Where it is proved, that notes due to the community were discounted by the husband who received the proceeds, they must be charged to him in a settlement of the community, though no proof was offered of their having been paid by the makers. He should be charged with the amount, unless it were shown that, on a failure of the makers to pay, he was forced to do so.

APPEAL from the Court of Probates of New Orleans, *Bermudez*, J.

*Soulé*, for the appellants.

*Grima* and *D. Seghers*, contra.

BULLARD, J.   The heirs of Marie Anne, late wife of Etienne Carraby, instituted the present action to obtain a rendition of an account by their father and natural tutor, of the community formerly existing between him and their mother.   An account was rendered accordingly, from which it appeared, that there was a balance in favor of the heirs of $53,080 99.

In this stage of the proceedings, The Citizen's Bank, The Louisiana State Bank, and D. Seghers, alleging themselves to be creditors of Carraby, intervened, and made opposition to the homologation of the account rendered by him.   They charge him with fraud and collusion with his children, to their prejudice :   1st. They deny, that the community which lately existed between the defendant and his deceased wife, is entitled to be credited with all the amounts set forth as forming the assets thereof.   2d.  They deny, that the item of sundry debts amounting to $50,000, or any part thereof, was due to the community; and, if ever due, they deny that any part of it has been paid to Etienne Carraby, particularly $30,000, by the firm of Norès & Brocard.   3d.  They deny, that the two contiguous houses situated in Orleans street, between Royal and Bourbon streets, and the store in Chartres street, belong to the community.   They allege, that said property, together with other property situated in St. Peter street, sold by Carraby to Cucullu, and the widow Montegut, was acquired by Carraby during the community, but was not paid for by him. That hence proceeds the judgment for $62,303 59, obtained in the Court of Probates, by P. Guesnon, executor of Antoine Carraby, against Etienne Carraby, rendered on the 1st of May, 1839. 4th.   They allege, that the defendant married on the 4th of July, 1815, and that he possessed previously to, and since his marriage, considerable sums of money, which are not a part of the community of *acquêts* and gains, and which ought to be deducted.   5th. That previous to his marriage, he inherited a considerable sum of money, slaves, and other property from Maria Pradeau, *veuve* Hognon, in all fifty thousand dollars.   6th. They allege, that Carraby, before his marriage, had lent large sums of money on mortgages, which were paid to him after his marriage, and which

form a charge upon the community. They specify $6393, loaned to Hareng, March 30, 1814 ; and $7000, to Delino, in August, 1814, which was afterwards paid by Delaronde ; $2819, the amount of a note drawn by Hareng, in favor of Bourgeois, dated June 4, 1814, which was paid to Carraby, as holder ; $1415 79, due by Soubercaze to Carraby, and received by him, May, 1815 ; another sum of $2429, a judgment in favor of Carraby against Livaudais. 7th. They allege, that property was sold by Carraby which he inherited from the veuve Hognon, particularly a slave, in February, 1814. The opponents pray, that the account may be amended accordingly.

After these oppositions were filed, and due proof of publication, it was ordered, on the motion of the counsel of the plaintiffs, that the account rendered by Carraby be approved and homologated, except so far as not therein opposed.

The plaintiffs next filed an answer to these oppositions, in which they say, that they had felt it their duty not to discuss any part of the account rendered by their father ; but, that the oppo-nent having contested their whole claim, they now reply, that the items brought to their credit on said account, are correct and true. That since the homologation of the account, they have discovered several sums for which the community was entitled to credit, which have been omitted in said account, and that they were entitled to have the same corrected. They specify an item of $7500, purporting to have been received from Bellanger, which they say should have been $13,000 ; a sum of $3169 89, due by the heirs of Fletcher ; and a further sum of $15,000, recovered for the community, but which has been omitted. They pray for judgment accordingly.

This proceeding was excepted to by the opposing creditors as irregular, and amounting to an indirect opposition, after the homologation of the account, except so far as it had been formally opposed, on the motion of the plaintiffs themselves.

After a full investigation of the matters of fact, as well as of law, the Court of Probates, being satisfied, that the community was insolvent at the death of Mrs. Carraby, sustained the oppositions, and the plaintiffs appealed.

Before proceeding to investigate the facts disclosed by the evi-

dence, it may be premised, that the question between the intervenors and the plaintiffs, is not so much what is due by their tutor, as, whether the community was insolvent or not; if insolvent, it is of no importance to what extent. If it should appear from the evidence, that the community was solvent, then it becomes important to ascertain the precise amount due to the plaintiffs on that account, because, for that amount, they are entitled to be paid in preference to the intervenors.

It is proper also in this place to say, that we cannot yield our assent to the doctrine contended for by the counsel for the plaintiffs, that, according to the Spanish law, the personal property of the parties before marriage would belong to the community, when they had neglected to establish the amount at the time of the marriage. The expression quoted from Febrero, establishes the same presumption which exists under the new code, that every thing left at the dissolution of the community is presumed common, unless it be proved what each spouse brought in. The proof to be given, need not consist of any authentic document contemporaneous with the marriage. "*Quando no se acredita cuales o quantos llevo cada uno, todos se reputan gananciales.*" Gomez in his Commentaries on the laws of Toro, expresses it as follows : "*Prius et ante ómnia deducitur proprium patrimonium et capitale uniuscujusque, vel æstimatio ejus.*" Comm. ad Leges Taurinas, 50, 51, 52, 53, page 622, No. 69 ; ed. of Madrid, of 1794. The community, as established by the Spanish law, and the Code of 1808, remains unchanged in this respect. Whatever either party brought in, either in money or otherwise, is to be deducted from the mass, and the balance alone divided; and any legal evidence is admissible to prove how much, and what effects, each party possessed before the marriage. It is true, Gomez says, it is advisable to have authentic evidence at the time of the marriage. After saying, that the presumption is in favor of the community, and that, in case of doubt, all the property will be regarded as common, he adds : "*Et sic erit optimum consilium, ut tempore contracti matrimonii fiat scriptura publica de omnibus bonis quæ uterque conjux habet et adducit ad domum ; &c.*" *Loco citato*, No. 70.

We do not mean to say, that it will suffice to show, that the

party was possessed of particular property, or had a certain sum of money at a time previous to the marriage ; it must be proved to have belonged to him at the time the marriage was celebrated. But even such authentic act, passed between the parties, would not be conclusive evidence against third persons ; even the numeration of dower must be proved, *quoad* creditors, by evidence *aliunde*.

It is proper in this place, and before entering upon the merits of the case, to say that we think it irregular and erroneous, after the partial homologation of the account rendered by Carraby, to permit the plaintiffs, on whose motion the account was approved, so far as not opposed, to allege errors therein. · An opposition, in such a case, requires no answer. The plaintiffs had waived any opposition on their part, to the account so rendered, by provoking the homologation of the account. We shall, therefore, abstain from any examination of those matters, in which the plaintiffs allege there is error to their prejudice in the account.

The debit side of the account rendered, showing the assets of the community, exhibits an amount of $141,515 47. The credit side, exhibiting the charges upon the mass, amounts to 35,353 76. The balance in favor of the community is, therefore, $106,161 71. of which the plaintiffs are entitled to one-half. Both sides are contested by the opposing creditors. It is alleged, that Carraby has fraudulently omitted to credit himself with the property he brought into marriage, and has charged himself with property, as belonging to the community, which has never been paid for. We proceed to examine, 1st, the credit side of the account, or the charges against the community, according to the evidence ; and 2d, the assets, or mass of the community.

I. There is an amount of $35,353, not contested. The opponents allege, under the 6th and 7th heads of opposition, that Carraby, shortly previous to his marriage, had loaned large sums of money, which were repaid during the existence of the community ; and which, consequently, he had a right to withdraw, as forming a charge upon the mass. These different sums are alleged to amount to $18,612. The evidence shows that, Carraby loaned to Hareng, before his marriage, $6393, which was repaid afterwards ; to Delino, $7000 ; to Mrs. Soubercaze, $1415 79 ;

and that he had a judgment against Livaudais for $2363 90, which was paid also after the marriage.    The total amount which was allowed, is $17,172 69.    The amount loaned to Hareng is contested.    It is asserted, that it was the money of Antoine Carraby.    We are not authorized to draw that conclusion, from the simple fact that it was paid to him, especially, when it appears by two authentic acts, that the sum was loaned by Etienne Carraby, and that the mortgage, taken to secure the loan, was still his property in 1817.    This amount, added to the $35,353, brings the charges up to $52,525 69.

The next, and most important item, is a judgment of the Probate Court, in favor of the representatives of Antoine Carraby against Etienne Carraby, for $62,303 68.    This was a debt of the community, contracted during its existence, principally for the purchase of property belonging to the estate of Antoine Carraby. This judgment, has since been reduced to $27,638 03, in consequence of claims of Etienne Carraby, against the estate of his brother, for a legacy left him by the will of Antoine Carraby, and moneys paid by him, to other legatees.    Those sums which went in compensation, were independent of the community, except about $10,645 44 ; so that the balance of the original judgment, after deducting that amount, is still a charge upon the estate : that is to say, $51,658 24; and that sum, added to the amount above stated of $52, 525 69, shows a total of charges against the community of $104,183 93.

II.  We come, in the second place, to examine the other side of the account, representing the assets of the community, which appear to amount to $141,515 47.

The next important item, which it is contended, ought to be struck from the account, is a debt alleged to have been owing to the community, by Norès & Brocard, two sons in law of Carraby, which they repaid to him after the death of Mrs. Carraby.    This payment is earnestly contested, and the Court of Probates rejected it.

We concur with the court below in the opinion, that neither the inventory taken after the death of Mrs. Carraby, nor a statement of accounts between Carraby and Norès & Brocard, furnish evidence against the opposing creditors, either of the existence or

subsequent payment of that debt. It is probable, indeed, that Carraby assisted his sons in law in going into business, before the death of his wife ; but the extent of his advances is not shown by any satisfactory evidence. Neither the nature of the trade in which they were engaged, nor the capital apparently employed, nor the parol evidence in the record, justify the belief, that so large an amount as thirty thousand dollars, was either advanced or refunded. Norès & Brocard failed, and made a surrender shortly afterwards. Their books, which although not properly evidence, appear to have been used as such, are far from proving this item of the account. The testimonial proof on this point, is vague and unsatisfactory, and the family connection of the parties, while it may furnish an excuse for some carelessness in keeping the accounts, does not prove the payment of so large a sum. Many important entries, in the books of Norès & Brocard are in the handwriting of Carraby, and the manner in which the books have been kept, is not calculated to inspire confidence in their entire correctness. We, therefore, concur with the court below, in the opinion, that this item is not supported by sufficient legal evidence.

The Court of Probates rejected several items, amounting together to $3,637 38, composed of notes for different amounts, due to the community by Espinosa, Petitpain, Leaumont and Davenport. It was in proof, that Carraby had these notes discounted through a broker, who testifies to the fact. They were rejected as a charge against Carraby, because, it was not shown that they had been paid by the makers. The court, in our opinion, erred. When Carraby discounted the notes and received the money for them, they were paid, so far as he was concerned ; and he was chargeable with the amount, unless it be shown, that, on a failure of the makers to pay, he was compelled to do so, as endorser, and thus became repossessed of the notes. This amount must, therefore, be reinstated. The difference between $3637 38 and $30,000, to wit, $26,362 62, must be deducted from the original amount of assets, and leaves a balance of $115,152 38.

The court rejected another item, $7425 22, made up of a claim on Philip Guesnon, for $1000, and another of $1624 ; a claim on Omer Guesnon for $2000 ; a claim on Mrs. Collson for

$1720; a claim on Mrs. Henry for $920 ; and one on Larochette for $100 ; and on Le Bourgeois for $61. There is no evidence to show, that those items form a proper charge in the account against Carraby, and the court did not err in rejecting them.

We have already expressed our opinion, that the court erred, in permitting the plaintiffs to bring forward any new charge against the defendant, after the partial homologation of the account on their motion. It follows, that a sum of $5500, which was allowed them, on account of the Bellanger transaction, as an additional charge against their father, is to be rejected. This last sum, added to the above $7425 22, in all $12,925 22, being deducted from the amount of assets already stated, leaves a balance $102,227 16, which falls short of the charges.

It is useless to carry our inquiries any further. If the community was insolvent, as we do not doubt according to the evidence before us, the opposing creditors have made good their opposition, and have no interest in further scrutinizing the accounts between the parties. If it be shown, that the plaintiffs have no claim against their tutor, growing out of the settlement of the community, then the opposing creditors are to be paid in preference to the plaintiffs. It was only so far, as the plaintiffs might have a legal mortgage on the estate of their father, that the opposing creditors had any interest in contesting their claims. Notwithstanding some differences of opinion, upon some of the questions of law which the case presents, we concur with the Court of Probates in the result, that the opposition must be sustained.

*Judgment affirmed.*