STATE
*v.*
JUDGE 4TH DIS. CT.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

| 14 | 61 |
|----|----|
| 45 | 480 |
| 45 | 483 |
| 14 | 61 |
| 49 | .966 |
| 14 | 61 |
| 107 | 147 |
| 14 | 61 |
| 116 | 384 |
| 14 | 61 |
| 118 | 464 |
| 120 | 281 |
| 14 | 61 |
| 124 | 594 |
| 125 | 227 |

## JOHN W. WOOD et als. *v.* SAMUEL S. HARRELL.

Where an appeal has been taken by the defendant and warrantor, and the defendant alone files an appeal bond, it is presumed that the warrantor has abandoned his appeal, and in such a case the plaintiff cannot complain, as he has no judgment against the party called in warranty.

Objections to the sufficiency of the security on the appeal bond, should be made in the court below.

No judgment having been rendered in favor of the plaintiff against the warrantor, there can be no objection to the warrantor signing, as surety, the appeal bond given by defendant.

The law does not make it absolutely necessary for the Clerk to affix the seal of the court, to his certificate attached to the transcript of the record.

Where plaintiffs bring a petitory action to recover a slave, alleging that their right of property in the slave was derived by inheritance from their mother, and subsequently attempt to amend their petition by demanding in the alternative, if the court should be of opinion that the slave was the community property of their father and mother, that they be decreed to be the owners of one-half of the slave claimed, and at the same time expressly adhere to their original demand.—*Held:* That the two demands are inconsistent, and that the District Court did not err in rejecting the alternative demand.

Parol evidence is inadmissible to show that a slave was received by the husband, in lieu of money due his wife from her father's estate.

Property bought by the husband in his own name, and paid for with the separate funds of his wife, is not the property of his wife, but the fact of his having paid for it out of the separate funds of his wife, gives to her a mortgage for the amount thus used, which in a proper form of action may be enforced on any property of the husband.

APPEAL from the District Court of the Parish of East Feliciana, *Ratliff,* J. *J. B. Smith, P. Pond* and *John McVea,* for plaintiffs and appellees. *Muse & Hardee,* for defendant and appellant.

BUCHANAN, J. Plaintiffs and appellees move to dismiss this appeal, on the following grounds:

1st. That the warrantors, who are appellants, have given no appeal bond.

2d. That the appeal bond filed by defendant is defective, inasmuch as the surety on that bond is one of the warrantors, who is also an appellant of record.

3d. That the certificate of the Clerk of the District Court to the transcript of appeal has not the seal of the court.

I. Judgment was rendered upon the verdict of a jury, in favor of plaintiffs, against defendant, for certain slaves and their hire; and also in favor of defendant, against his warrantors, for the value of said slaves and their hire. On motion, an appeal was allowed to the defendant and warrantors. The defendant alone has filed an appeal bond. From this it would seem that the warrantors have abandoned their appeal. But that is no concern of the plaintiffs. They have no judgment against the warrantors, nor have they asked any such by their pleadings.

II. Objections to the sufficiency of the security upon the appeal bond should have been made in the court below. As already observed, the judgment against

the defendant is entirely distinct (being in favor of a different party) from that against the warrantors. No reason is seen why the warrantor, if she possessed the legal requisites, might not be the security of the defendant upon his appeal bond in this case.

III. The law does not in express terms require the seal of the court to the certificate of the Clerk to the transcript of appeal. C. P. 585, 896, 898. If it did, as the want of a seal is an irregularity clearly not attributable to the fault of the appellant, it would merely justify us in allowing time to rectify it. Acts of 1839, p. 170; Acts 1855, p. 314. But that would not be necessary here. The Clerk certifies the record, under his "signature official and the seal of said court," although no impress of the seal appears in the space reserved for that purpose in the margin of the certificate. See *Conway* v. *Erwin*, 1 An. 391; *Medley* v. *Voris*, 2 An. 140.

The motion to dismiss is overruled.

Plaintiffs claim a negress slave named *Harriet*, and her issue, in possession of defendant, as their property by right of inheritance from their mother, *Winifred Hurst*, deceased wife of *Anderson Carle*; their mother, as they allege, having inherited said slave *Harriet* from the estate of her father, *Henry Hurst*.

Defendant and warrantors deny specially that plaintiffs' mother inherited the slave *Harriet* from her father, as the plaintiffs pretend. They aver that the said slave was adjudicated, at a probate sale of *Henry Hurst's* estate, to *Anderson Carle*, by whom she was sold to *Hezekiah Harrell*, from whom defendant derives title. Defendant pleads the prescription of five, ten and fifteen years, and avers an open and undisturbed possession in himself and his authors, by virtue of a title translative of property.

Several years after issue thus joined, plaintiffs attempted to amend, by demanding, in the alternative " if the court should be of opinion, after hearing all the evidence, that *Harriet* was community property of their father and mother," that a decree might be entered up in their behalf for the one-half of the slaves claimed. At the same time, not relinquishing, but expressly adhering to, their original demand.

The District Court rejected this alternative demand; to which plaintiffs excepted. This ruling was correct. The two demands were inconsistent. Had they been presented in the same petition originally, the defendant might have refused to answer until the plaintiffs had made their election, whether they demanded a whole or only an undivided half ownership of the slave in question.

The court also correctly rejected parol evidence that the negro woman *Harriet* was received by *Winifred Hurst*, in lieu of money due her from her father's estate, for the price and sum of five hundred and ninety-one dollars. Such testimony was not only, in effect, making out a title to a slave by parol, but it contradicts the written and recorded evidence in the cause. The *proces verbal* of the probate sale of the effects of *Henry Hurst's* succession, given in evidence by plaintiffs themselves, shows that the slave *Harriet* was adjudicated to *Anderson Carle*, at such sale, by the parish Judge, for the sum of five hundred and ninety-one dollars, on a credit of one and two years, for his notes with good and approved freehold security, with ten per cent. interest from date of purchase until paid, and special mortgage until final payment.

All the cases quoted by the counsel of plaintiffs, in opposition to the ruling of the court upon this point, viz, *Dominguez* v. *Lee*, 17 La. 295; *Terrell* v. *Cutrer*,

1 Rob. 367; *Rousse* v. *Wheeler*, 4 Rob. 114; *Stroud* v. *Humble*, 2 An. 930; and      WOOD
*Metcalf* v. *Clark*, 8 An. 286—are cases where the purchase was made either in-      *v.*
the name of the wife alone, or of the wife and husband jointly. In which cases,     HARRELL.
proof was admitted, as against creditors of the husband, that the purchase price
was paid out of the separate funds of the wife; and it was held, that, although
in general purchases during marriage would make the things purchased common
property, according to Article 2371 of the Code, yet, if the thing purchased by
the wife were paid for out of her separate funds, the property would become pa-
raphernal, provided the wife had not parted with the administration of her para-
phernal estate. See the language of Judge Simon in *Rousse* v. *Wheeler*.

Now, there is nothing analogous to those cases in the present. *Harriet* was
not purchased in the name of *Mrs. Carle* individually, or jointly with her hus-
band, but in the name of her husband alone. The proof offered, was proof of a
different contract—a sale to a different vendee—which (as the object sold was a
slave) could not be proved by parol.

Even supposing that *Carle* made use of his wife's separate funds to pay for the
property thus acquired in his own name, that would not, under the authority of
the case cited, have made such property hers. It would only have given rise to
a mortgage for the amount of the separate funds thus employed, which, in a
proper form of action, might have been enforced against *Carle's* property, or
property alienated by him in the hands of third persons.

But in reference to this question of the manner in which the slave *Harriet*
was paid for by *Carle*, we have in evidence :

1st. The final account of administration of *Henry Hurst's* estate, and the
judgment of the homologation of the same, rendered on the 3d of February, 1829,
which were given in evidence by plaintiffs, and are entirely inconsistent with the
parol evidence offered by them and rejected by the court. For in that account
the administrator charges himself with all the notes given by the purchasers at
the probate sale above mentioned, (including *Carle*,) as so much cash received
by him; and the judgment of homologation fixes the distributive shares of the
eight heirs of *Henry Hurst*, (including *Mrs. Carle*,) without any deduction made
for any thing paid on account of her share, or received *pro tanto* in lieu of her
share. Yet this account was filed, and this judgment of homologation rendered,
more than three years after the probate sale, and more than one year after the
last of *Carle's* notes for *Harriet* and for the other slaves and movables, purchased
by him at the said sale, had fallen due.

The record thus given in evidence by plaintiffs, is corroborated by another
record offered in evidence on the part of the defence, but which was rejected by
the District Court, and which comes up annexed to a bill of exceptions. It is
an extract from the record of sales and mortgages of the parish of St. Helena,
duly certified to be a correct copy by the Recorder of said parish. It recites a
conveyance by the parish Judge and by the curator and curatrix of *Henry
Hurst's* succession, of slaves and movables adjudicated to *Anderson Carle* at the
probate sale of the 26th December, 1825, with mortgage granted by said *Carle*
for the security of the payment of two notes, at one and two years, given by him
for the price of adjudication.

This act of sale and mortgage, of the same date with the probate sale, is copied
at full length, with a certificate appended, signed by *L. H. Moor*, parish Judge
of St. Helena, that he had compared it with the original, and having found it
correct, had admitted it to record on the 29th of December, 1825.

Across this record is written another certificate, signed by *Burlin Childress*, parish Judge of St. Helena, that the notes described therein were acknowledged before him by the curator of *Henry Hurst's* succession, to have been paid, and that the mortgage was thereupon cancelled, of date the first of February, 1830.

The objection made to this certified extract from the parish records of St. Helena, and which was sustained by the District Court, was, that said document was not an original act, but only a copy of a copy. This objection was improperly sustained.

The certificates of the two parish Judges, one of the 29th December, 1825, that the mortgage had been recorded—and the other of the 1st of February, 1830, that the mortgage had been erased—were certainly originals, of which the parish Recorder was the legal custodian, and of which his certified copy is authentic proof. The first of those certificates recites the conveyance and mortgage very properly, in order to prevent all uncertainty as to the objects of the mortgage. The certified extract thus offered, was clearly not only good evidence, but the best evidence of the inscription of the mortgage granted by *Carle* upon the slave *Harriet*, and of its radiation.

This document was not at all needed by the defendant as evidence of the contract of purchase by *Carle*, out of which the mortgage originated. That contract had already been proved by plaintiffs, when they gave in evidence the *proces verbal* of sale.

Again : There is no reason to suppose that the original of the act of sale and mortgage, which appears to have been offered to the parish Judge for record, was ever in the possession of the defendant or warrantors. The parties to that act were, the representatives of *Henry Hurst* on the one side, and *Anderson Carle* on the other side. The latter of those parties was the father of the plaintiffs ; the former are their near relations, and have been examined by them under commissions in this suit, as witnesses.

But we repeat, that we view the copy of the act of mortgage as mere matter of recital and reference in the certificates of inscription and of radiation, which ought not to have had the effect of excluding those certificates as evidence. It will be unnecessary to remand the cause on account of the rejection of this document, inasmuch as we have it before us, and full effect may be given to it, the only objection to its admissibility being overruled. With it, nay even perhaps without it, the claim of plaintiffs to the ownership of the slave *Harriet*, and her issue, is disproved.

The judgment of the District Court in favor of plaintiffs and appellees is, therefore, reversed, and judgment is hereby rendered in favor of defendant and appellant, and against plaintiffs, with costs in both courts.

MERRICK, C. J., recused himself in this case, having been of counsel.