## LEWIS *v.* LEWIS.

WHERE a man married in 1854, then possessed of separate property, cattle, horses and money, valued at $20,000, and died in 1859, possessed of cattle, horses and money, valued at $40,000, and his sole business at his marriage, and from thence until his death, was dealing in stock of that kind ; and the stock at his death consisted of about $4,000 worth of the original stock possessed at the time of his marriage, and the balance consisted of the increase of such stock, together with other stock bought with the proceeds of sales of original stock : *Held,* that as the deceased was engaged in no other business except dealing in stock from his marriage to his death, the fair inference is that the common property is the difference between the original value of his property at his marriage and the value of the property possessed at the time of his death, less the community debts.

APPEAL from the Probate Court of San Joaquin county.

John B. Lewis died intestate in 1859, leaving him surviving no descendants, nor father nor mother, but several brothers and sisters and the children of a deceased sister, and also his wife, who was appointed administratrix of his estate. At the expiration of the usual ten months' notice to creditors, the administratrix filed a petition for final distribution of the estate, and claiming as surviving wife the entire estate as community property. The brothers, sisters and the minor children of the deceased sister of the deceased opposed the claim of the wife, contending that the property was the separate estate of the deceased, one-half of which should go to the wife, and the other half to them. The Probate Court heard the proofs of the parties, and found the facts as follows :

1st. John B. Lewis settled on the Moquelumne river, San Joaquin county, in the fall of the year 1850, and engaged in the stock business, buying, selling and raising cattle and horses, principally cattle.

2d. He continued in said business at said place up to the time of his marriage, August 1st, 1854, and afterwards up to the time of his death, July 4th, 1859.

3d. At the time of his marriage he owned and possessed the following property, viz. : an undivided one-third interest in a band of nine hundred and sixty cattle, (belonging to Kile, Lewis, Oldham & Kile) of the value of.........................$10,000
Eighty head of cattle, remnant of Miller band, worth forty
    dollars per head.............................. 3,200

Lewis *v.* Lewis.

| | |
|---|---:|
| Two milch cows, worth one hundred dollars each......... | 200 |
| Two American mares, worth one hundred and fifty dollars each...................................... | 300 |
| One stallion, " Sir Charles,"....................... | 1,500 |
| One hundred and fifty saddle horses, mares and colts, worth thirty-five dollars per head.................... | 5,250 |
| Rancho and improvements, worth....:............... | 500 |

Total value of property.........................$20,950

4th. The indebtedness of the deceased at the time of his marriage amounted to................................$1,000

Value of separate estate at the time of marriage.........19,950

5th. The copartnership cattle of Kile, Lewis, Oldham & Kile, after June or July, 1854, were sold from time to time, when they became fit for beef; and out of a portion of the proceeds of such sales, $5,000 were paid to Lewis, $1,000 of which he applied to the payment of his indebtedness heretofore mentioned, and in the fall of 1855, he invested the remaining $4,000 in copartnership with Joseph Kile in a lot of cattle numbering between five and six hundred.

6th. In the fall of 1856, the copartnership cattle, and their increase, of Kile, Lewis, Oldham & Kile, and also of Lewis & Kile, were all sold (with the exception of a small amount which Lewis bought in the spring of 1857) and the partnership dissolved, and from the proceeds of the sales of said cattle and their increase Lewis had $17,000 in cash, $12,000 of which he took to Los Angeles with him in the spring of 1857, with which he purchased then and there 1,060 cattle, which cattle he drove to King's river; a part of which cattle and a part of their increase were the cattle that Lewis had at the time of his death.

7th. Of the one hundred and fifty horses that Lewis had at the time of his marriage, about one hundred head remained on hand of the original stock, at the time of his death, and their increase amounting to $———— ; also the stallion, " Sir Charles."

8th. The ranch where he resided at the time of his marriage, and continued to live upon up to the time of his death, containing two hundred acres, valued at eight hundred dollars, since his death has

been set apart by the Probate Court for the use and benefit of the widow ; also personal property of the value of six hundred and thirty-two dollars and forty-five cents has been set apart for the like use and benefit.

9th. No part of the property which the said Lewis had and owned at the time of his marriage was preserved in kind at the time of his death; excepting the ranch and improvements, of the value at the time of his marriage of five hundred dollars ; also about one hundred head of the original stock of horses, of the value at the time of thirty-five dollars per head, or for the whole of $3,500, and the stallion " Sir Charles." Said rancho is the same which has been set apart for the homestead, and of the entire stock of horses of every description belonging to the estate at the time of Lewis' death, all have been sold prior to the filing of this petition for distribution, except about forty-one head, which may or may not include a part of the deceased's original band.

10th. The business in which the deceased was engaged after his marriage was managed and conducted in the same manner as before his marriage, and all his said estate and property owned at the time of his marriage constituted his sole capital for the prosecution of said business, and the difference in the amount of his estate at the time of said marriage, August 31st, 1854, $19,950, and the amount of the gross estate on hand at the time of his death, July 4th, 1859, $39,509—that difference being the sum of $19,559.10— is the increase, rents and profits of the said estate of Lewis, so owned and employed on the thirty-first of August, 1854, and during the four years or thereabouts next ensuing.

11th. All such part of the said estate on hand at his marriage, and which was not preserved in kind and on hand at his death, was sold in the lifetime of the deceased, and the money arising from such sales invested in other property, forming a part of the estate at the time of his death, the principal investment thereof having been made in the band of 1,060 head of cattle purchased in 1859, being the property and cattle set forth in the inventory.

12. The debts of said Lewis, amounting to $7,380.73. were all contracted after the marriage, and there has been allowed to the widow for her support the sum of one hundred and fifty dollars per

month, which, from July 4th, 1859, to October 4th, 1860, amounts to $2,250, and expenses of administration and preserving the property during the settlement of the estate, $3,500.

13th. The balance of estate on hand at the date of the settlement of the administratrix's account, September 26th, 1860, was in value $24,662.56, consisting of the cattle, horses, cash and other personal property, and the interest in land enumerated in Exhibit H, accompanying said account—that is to say, a balance due Lewis Waggoner, one hundred and eighty-four dollars and seventy-eight cents, and eleven dollars and twenty-eight cents due I. J. McIntosh, which balance is subject to the deduction specified in the decree passed upon the hearing of the said account, and is also subject to a further deduction of six hundred and eighty-three dollars and ninety-six cents for amount due to Charles R. Lewis, under his contract for taking care of said stock for one year ending October 25th, 1860, and to a further deduction of $1,710.36, for so much money due to the administratrix for her commissions and for taxes due for the year 1860, amounting to three hundred and seven dollars and eleven cents.

From which facts the Court finds the following conclusions of law :

1st. The property and estate to the value of $19,950, which the deceased owned at and before the time of his marriage was his separate estate.

2d. That all said property having remained either in kind or been converted into other money or property existing at the time of Lewis' death continued the separate property of said Lewis at the time last named.

3d. That the increase in said estate at the time of Lewis' death, and since, and during the settlement of the estate, over the value of said separate property, was the rents, issues and profits of said separate property, and constituted the common property of John B. Lewis and Elvira Lewis, his wife.

4th. That all said debts are community debts, and the expense of supporting the surviving wife, and the expenses and charges of administration are all chargeable primarily against the common property, and they are to be regarded as having been deducted, in the settlement of the estate, out of that fund.

5th. That of the net balance of the estate on hand when all outstanding charges shall have been paid, whether the same consists of property in kind, land, cash or other property whatsoever, an amount thereof equal in value to the sum of nineteen thousand, nine hundred and fifty dollars, ($19,950) is and must be treated and distributed as the separate estate of the deceased, and that any excess beyond that amount or value is and must be treated and distributed as the common property of the deceased and the surviving wife.

6th. That the surviving widow is by law entitled to the whole of the common property, and that the separate estate, of the value as aforesaid, has descended in equal shares of one-half thereof to the surviving wife, and the other half to the sisters and children of a deceased sister of the deceased—the children aforesaid taking the share to which their deceased mother would have been entitled.

It is therefore ordered, adjudged and decreed, that of the net residue of the said estate, of whatsoever the same may consist, the said Elvira Lewis, the surviving wife and the petitioner herein, and the said Charles R. Lewis, James H. Lewis, Thomas Lewis, Samuel R. Lewis, George H. Lewis, Margaret Waggoner, the wife of Charles Waggoner, Mary Jefferds, the wife of Oliver Jefferds, and Eleanor Hale and Thomas Hale, minor heirs of Eliza E. Hale, the respondents herein, shall be and they are hereby declared to be owners in common of an amount equal in value to the sum of $19,950, and of any less value if said net residue shall not be sufficient to cover that sum, the same being hereby assigned to all said parties, and to be first deducted from said net residue.

That of said amount, the said Elvira Lewis be, and she is hereby declared to be the owner of the one undivided half thereof ; and the said Charles R. Lewis to be the owner of the undivided eighth of the one undivided half ; the said George M. Lewis, of a like one undivided eighth ; the said James M. Lewis to be the owner of a like one undivided eighth ; the said Thomas Lewis to be the owner of a like one undivided eighth ; the said Samuel R. Lewis to be the owner of a like one undivided eighth ; the said Margaret Waggoner, wife of Charles Waggoner, to be the owner of a like one undivided eighth ; the said Mary Jefferds, wife of Oliver

Jefferds, to be the owner of a like one undivided eighth, and Eleanor Hale and Thomas Hale, minor heirs of Eliza E. Hale, to be owners of a like one undivided eighth.

And it is further ordered, adjudged and decreed, that any excess of said net residue remaining after taking from said residue the amount herein above distributed, of whatsoever the said excess may consist, be and the same is hereby assigned to the said Elvira Lewis, the surviving wife of said deceased.

Plaintiff appeals.

*Baine & Bouldin,* for Appellants, relied upon *Meyer* v. *Kinzer and Wife,* 12 Cal. 247.

*Hall & Huggins,* for Respondents, cited the same case, and also *Panaud* v. *Jones,* 1 Cal. ; White's New Recop. Tit. VII, 57, 60, 61, 62, note 47, 206 ; Act of 1850, ch. 103, sec. 11, defining rights of husband and wife ; 1 Domat's Civil Law, by Straham, 367, sec. 816.

BALDWIN, J. delivered the opinion of the Court—COPE, J. concurring.

This was a proceeding in the Probate Court for the settlement of an estate. The deceased, John B. Lewis, was a married man at the time of his death, and died in the year 1859, intestate, leaving no issue, and a wife surviving him. The marriage took place in August, 1854. It seems that at this time, the deceased owned as his separate property, cattle, etc., worth about $20,000. He was engaged in the business of buying and selling cattle, etc. Of course, repeated changes would be made of the original stock—other cattle bought and sold, etc. At the time of the death, his estate, consisting of this capital and its accretions, had increased to some $35,000, and the fair inference is, that as the deceased was engaged in no other business, the profits or common property were made up and constituted by the difference between the original value of the capital and the value of the property held at the time of the death, less the community debts. This, at least, is as fair an approximation to the true result as can be expected in a case of this sort. We think the County Judge settled the account, in view of the circumstances of the case, upon a just and fair basis, and we affirm the judgment.