W. F. WOLFORD, ADMINISTRATOR, ET AL. V. J. W. MELTON ET AL.

Decided June 12, 1901.

1.—Community Property—Increase of Live Stock.

See facts under which, upon the issue whether real estate purchased by a husband after the death of his first wife with the proceeds of sale of a stock of horses was community property of the first marriage, it was error to refuse a charge that the increase, after the first wife's death, of horses owned by the husband before his marriage with her were not community, but were his separate property.

2.—Charge.

Matters clearly proved by the testimony on both sides, should be assumed as true by the court, not submitted to the jury.

Appeal from Collin. Tried below before Hon. J. E. Dillard.

*Abernathy & Beverly,* for appellants.

*J. R. Gough* and *J. M. Pearson,* for appellees.

KEY, ASSOCIATE JUSTICE.—J. W. Melton and his sister Edna Woodman, joined by her husband, brought this suit against W. F. Wolford, administrator of the estate of J. T. Melton, deceased; Nancy C. Melton, surviving wife of J. T. Melton; Martin E. Melton, Dibrel G. Melton, Carlton E. Melton, Stillwell A. Melton, and Mary Melton, the last five named being children of John T. Melton and his second wife, Nancy C. Melton, to recover 5-12 of two tracts of land. The plaintiffs Mrs. Edna Woodman and J. W. Melton are the sole surviving children of J. T. Melton by his first wife, Mary Jane Melton. The land involved was acquired by J. T. Melton after the death of his first wife, and the plaintiffs undertook to show that their father had paid for the land with money received by him from the sale of a stock of horses, which was community property between him and his first wife.

The testimony shows that John T. Melton married his first wife in 1868; that she died in 1875, and that at the time of their marriage he owned a bunch of horses, which, of course, were his separate property. They were stock horses and continued to increase; and it is well settled that the increase of live stock, the separate property of one spouse, becomes communiy property belonging to both; and it is upon this theory that the plaintiffs seek to make out their case.

Several years after his first marriage J. T. Melton moved his stock of horses from Collin County to Montague County; and in 1880 sold the entire herd, consisting of about 100 head; and the plaintiffs submitted testimony tending to show that the land in controversy was bought with the proceeds of that sale. The evidence tends to show that at the time J. T. Melton sold the stock of horses they ranged in age from colts up to fifteen years. The court instructed the jury among other things, as follows: "Colts and calves which are the offspring of mares and cows belonging to the separate estate of the husband which are brought after marriage belong to the community estate of the husband and wife." The court also refused an instruction requested by the defendants announcing, in substance, the proposition that if John T. Melton owned a stock of horses at the time of his marriage with his first wife and after her death any of the original stock remained and brought increase, such increase would be the separate property of J. T. Melton.

We think the charge given by the court was incomplete and misleading, and should have been supplemented by the special instruction referred to. The verdict for the plaintiffs awarding them all the interest they claimed in the land makes it manifest that the jury found that the entire stock of horses, when sold by J. T. Melton in 1880, was community property; while the testimony renders it not improbable that some of the animals comprising that stock were foaled after the death of the first wife and by mares owned by J. T. Melton at the time of his

marriage in 1868. This being the case, the court should have instructed the jury that all such animals were the separate property of J. T. Melton and no part of the community estate.

As to the merits of the case as developed by the statement of facts, we express no opinion.

We do not think that the other complaints against the action of the court in giving and refusing instructions show reversible error; however, the court's charge was unnecessarily voluminous. The facts and dates of J. T. Melton's first marriage,—the death of his first wife, leaving three children, one of whom has since died, leaving no surviving wife or child,—were matters so clearly established by testimony coming from both sides as to render it wholly unnecessary to submit to the jury any question in reference thereto.

For the error above indicated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*