## J. M. HOOPES ET AL. V. MARY N. MATHIS, EXECUTRIX.

### Decided June 17, 1905.

**1.—Community Property—Presumption—Burden of Proof.**

Property purchased during the marriage is presumed to belong to the community, and the burden of proof is on the party asserting the contrary.

**2.—Husband and Wife—Partnership.**

Where a husband and wife acted in a partnership relation in the purchase of bank stock her interest ceased to be separate estate, and the husband became her debtor to the extent of her separate funds used in the purchase.

**3.—Same—Tracing Separate Property of Wife—Mutations—Bank Stock.**

Where there was a joint investment in bank stock of separate funds of the husband and wife, it devolved on the wife's heirs, claiming through her, to trace the stock through mutations it had undergone and show that her separate funds actually went, in part at least, to the acquisition of the particular stock claimed by such heirs, and which had been levied on as the property of the husband. Evidence held not to identify any part of the stock in controversy as the separate property of the wife.

Appeal from the District Court of Aransas. Tried below before Hon. Stanley Welch.

*J. E. Elgin, Stayton & Berry* and *John C. Beasley,* for appellants.—The 152 shares of bank stock of the par value of $100 per share having been purchased for $15,200, of which $5,000 was the separate funds of Mrs. Hoopes, invested for her benefit, and $10,200 was the separate funds of J. M. Hoopes, the said Hoopes and wife owned and held the stock as tenants in common, each having an undivided interest in proportion to the purchase money respectively invested; and the disposition by Hoopes of all of said stock save 48 shares, by sale and otherwise, without authority from his wife, and for his own account, and in no respect for her account, would in effect be a partition of such common property, and the remainder in its entirety would belong to Mrs. Hoopes, as of her separate estate. Read v. Allen, 56 Texas, 193; McKay v. Treadwell, 8 Texas, 180; 68 Texas, 81; 73 Texas, 196; 56 Texas, 193; Freeman on Co-Ten., secs. 182, 183, 252; 17 Am. and Eng. Ency. Law, 672, 712.

*W. H. Baldwin* and *G. R. Scott,* for appellee.—1. In order for the heirs of the wife to prevail as against the judgment creditor of the husband, who has levied an execution on bank stock, which bank stock is in the name of the husband, they must show that the stock so levied upon was purchased with the separate property of the wife. Epperson v. Jones, 65 Texas, 429; Smith v. Bailey, 66 Texas, 554.

2. The presumption that property purchased during the marriage is community property is very cogent; and can only be repelled by clear and conclusive proof, that it was with the individual money or property of one of the partners. Where the property has not been preserved in specie or in kind, but, as in this case, has undergone mutation and changes, it is indispensable, to maintain its separate character, that it

be clearly and indisputably traced and identified. Chapman v. Allen, 15 Texas, 283; Schmeltz v. Garey, 49 Texas, 61; Philipowski v. Spencer, 63 Texas, 609; Schmeidt v. Huppmann, 73 Texas, 115.

3. Carrie Hoopes was simply a creditor of her husband, J. M. Hoopes, and had no greater right to the bank stock levied upon under either execution than any other creditor of J. M. Hoopes. Purdon v. Boyd, 82 Texas, 135; Cox v. Miller, 54 Texas, 22; Miller v. Marx & Kempner, 65 Texas, 132; Eppison v. Jones, 65 Texas, 429; Middlebrook Bros. v. Zapp, 73 Texas, 31.

GILL, ASSOCIATE JUSTICE.—In 1897 T. H. Mathis recovered a judgment against J. M. Hoopes and C. W. Boothe for $2,623. Mathis died in 1899, testate, and Mary N. Mathis, his wife, qualified as his executrix. The judgment being in force and unsatisfied, she caused an execution to be issued and had it levied on forty-five shares of capital stock of the First National Bank of Aransas Pass, Texas, as the property of J. M. Hoopes.

In 1901 Carrie Hoopes, joined by J. M. Hoopes (who was her husband), brought suit against Mary N. Mathis, executrix, claiming that the stock levied on was her separate property. She sought to restrain the sale by injunction.

In March, 1901, Mrs. Mathis caused another execution to issue and had it levied on thirteen other shares of the stock of the same institution. These thirteen shares were evidenced by certificate No. 168, and stood in the name of Carrie M. Hoopes. They were sold under the execution and bought in by the executrix. She thereupon sued Carrie M. Hoopes to recover them. These two suits were consolidated and tried together. This is the second appeal, the first judgment having been reversed by this court, 67 S. W. Rep., 544. Since then Carrie M. Hoopes has died intestate, and Juney and H. R. Hoopes, her children, and J. W. Hoopes have been made parties plaintiff.

After the new parties had been thus made the cause was again tried, and on July 28, 1904, the court sitting without a jury rendered judgment that plaintiffs Juney and H. R. Hoopes recover the thirteen shares evidenced by certificate No. 168; that J. W. Hoopes recover nothing, and the remaining 45 shares were adjudged to be the property of J. M. Hoopes and subject to the execution. From that judgment the plaintiffs have appealed. The facts are as follows:

Prior to 1890 J. M. Hoopes and Carrie Hoopes, his wife, resided in Iowa. He took certain separate funds of hers and combining them with funds of his own conducted a banking business in that State. In the year 1890 he closed out the business, and in an adjustment between himself and wife it was agreed that of the gross result of the banking venture her interest amounted to $5,000 and his to $12,500. He had charge and possession of it all and brought it to Aransas Pass, Texas, where he and his wife decided to invest $15,200 of it in the stock of the First National Bank of Aransas Pass. The husband thereupon bought 152 shares of the capital stock of said bank at its par value of $100 per share.

On the trial Hoopes testified, among other things, that of the sum thus invested $5,000 was the separate money of his wife, but the testi-

mony is conflicting as to the amount, as the application for injunction, sworn to by both Hoopes and his wife, contained a specific averment that her interest in the shares was 2-9, or $3,333. The stock thus subscribed for was all taken in the name of J. W. Hoopes, was evidenced by certificate No. 4 issued to and held by him, and was handled by him as his own, as will hereinafter more fully appear.

Between the years 1890 and 1900 he had transferred all these shares, except 60 which had been hypothecated to the bank as security for a loan. He discharged the loan by a transfer to the bank of 47 of the 60, and had a certificate issued to his wife for the remaining 13. He had previously had issued to his wife a certificate for 5 shares. It is thus shown that every share purchased by her separate funds had passed out of his hands.

Hoopes testified that he transferred 10 shares to Mathis so that the latter might become a director in the bank. He then transferred 10 shares to C. W. Boothe to be used to raise money for the bank. For 27 shares transferred to J. W. Dary he received city property. For 10 shares transferred to Mr. Fulton he received some lots. That he gave 10 shares to J. W. Hoopes. He states that he then got back 45 shares, that is, 30 which he had let Mathis and others have and 15 from one Hoxie.

Other evidence shows, however, that he purchased from Mathis 20 shares evidenced by certificate No. 75; No. 77 for 15 shares, and No. 78 for 10 shares. That these made up the 45 shares, and that he exchanged these three certificates for No. 105 for 45 shares, which certificate was issued to him and in his name. He exchanged this for certificates Nos. 110, 111 and 112, the first for 25 shares, the other two for 10 each, and all issued in his own name. He exchanged No. 110 for 122 and 123 issued to himself, the first for 15, the second for 10 shares. He exchanged No. 112 for No. 129, which he had issued to J. W. Hoopes. He sold No. 111 to the Brownsville bank. He bought No. 116 (for 10 shares) from Warren Coleman, and had it reissued to himself in certificate No. 121. In purchasing the Hoxie 15 shares $500 of his wife's separate funds entered into the purchase price, but whether any of the shares levied on were those bought from Hoxie does not appear. These certificates Nos 121, 122 and 123 are the ones adjudged to appellee, and are in controversy on this appeal.

J. M. Hoopes testified further that he regarded all the certificates he transferred as his own. That he had intended to have a settlement with his wife, but never had. He sums up the history of certificate No. 4 in the following language: "I let T. H. Mathis have 10 shares and then C. W. Boothe 10 shares, and I then transferred to other parties other shares until I had only 60 left. These were hypothecated to the bank with which I settled by a transfer to it of 47 shares, and had issued to my wife the other 13 shares." He state generally that he had no authority to hypothecate his wife's stock and did not consider that he had.

The question is. whether the facts support the judgment of the court that Carrie M. Hoopes had no separate interest in the shares in controversy. The presumption is that property purchased during marriage is community, and the burden of proof is on the one asserting other-

wise. We are of opinion the evidence shows that J. M. Hoopes arrived in Texas with about $17,500 in cash, $5,000 of which, by force of the Iowa agreement, was the separate property of his wife. That at least $3,333 of the sum invested in the Aransas Bank stock so belonged to her. That thereby she acquired in the 152 shares an undivided interest equal in proportion to her share of the invested funds.

In the petition for injunction Hoopes and wife treat their relation in the Texas bank as a partnership relation, in which event, under the decisions of this State, her interest would cease to be separate, and her husband would become her debtor to the extent of her separate funds. (Purdon v. Boyd, 82 Texas, 135.)

In this view of the case the judgment is right in any event. If it be treated, however, as a mere joint investment of separate funds, it would devolve on her to trace the stock through its mutations, showing that her separate funds actually went in part at least to the acquisition of the stock levied on. In our opinion this has not been done.

The theory of plaintiffs as heirs of Carrie M. Hoopes seems to be that because she had an interest in the original 152 shares every share sold by Hoopes was in effect partitioned to him and so increase her interest in those unsold, so that when the number remaining equaled or was less than her original interest they were entirely hers. Following out this theory they seek to show that the 35 shares in controversy, though evidenced by different certificates, were but a repayment for loaned certificates, and therefore were a part of the original issue. Upon this proposition depends their right of recovery.

Certificate No. 121 for 10 shares standing in the name of J. M. Hoopes was purchased from Warren Coleman, and there is no evidence to support the contention that any part of his wife's separate funds entered into the purchase price. The Hoxie 15 shares, purchased in part by money acquired by Mrs. Hoopes in her separate right long subsequent to the original investment, is not shown by any satisfactory evidence to constitute a part of the stock levied on. If they were, Hoopes should have known, and he did not so testify. There is evidence to support the conclusion that 45 shares reacquired after the closing out of the last of the 152 shares was *purchased* from Mathis, and the facts are not consistent with the theory that they were loaned shares returned.

It is not enough that plaintiffs have shown that J. M. Hoopes had at one time in his name shares in which their mother had a separate interest, and that he disposed of them and now has other shares. They must go further and trace the separate funds into the shares levied on. The trial court's conclusion that this has not been done is supported by the record.

The first assignment points out an immaterial error, as J. W. Hoopes was dismissed from the suit as an improper party.

Our conclusion that Mrs. Hoopes had in the 152 shares a separate interest equal to the sum alleged in her application for injunction renders it unnecessary for us to correct in detail certain inaccuracies complained of in the trial court's conclusions of fact as to the Iowa investments and the sum owned in her separate right on her arrival in Texas. The history of the shares is long and intricate. We shall not undertake to review in detail the evidence affecting them, nor have

we deemed it necessary to review the assignments in detail. We regard it as a fact case, and our conclusion is that a right result was reached. The judgment of the trial court is therefore affirmed.

*Affirmed.*