## IN THE MATTER OF THE ESTATE OF SAMUEL FOSTER, DECEASED.

[No. 28,858; decided March 9, 1909.]

Community Property—Books of Account as Evidence.—Books of account kept by a man and by a corporation of which he was the controlling owner are admissible after his death to show that real estate acquired by him during coverture came from the proceeds or income of property owned by him before marriage.

Community Property—Mingling with Separate Property.—Separate property does not lose its quality as such by passing through various mutations, so long as it can be identified, and profits therefrom take on the same character; but when profits accrue from separate funds so commingled with the common property that their identity is lost, such profits are community property, if it does not appear what proportion thereof pertains to the separate and what to the common property.

Community Property.—Real Estate Acquired by Purchase by a Married Man is prima facie community property, and the burden rests upon one who asserts the contrary to establish his contention by clear and certain proof.

Community Property—Declaration of Testator.—The character of an estate as separate or community property is not affected by any declaration of the testator, but is determined by the mode in which the property was acquired.

Probate Homestead—Separate or Community Property.—On the application of the widow in this case for a probate homestead, it was held that the property of the decedent was his separate estate, and therefore that a homestead could be awarded her for life only.

Application by widow for an absolute homestead.

Heller & Powers, for Mary A. Foster, widow.

Joseph Hutchinson, for Lyman D. Foster, executor, son of decedent.

COFFEY, J.  On January 15, 1904, Mary A. Foster filed a petition in which she recited that Samuel Foster died in San Francisco, of which place he was a resident, on the fifteenth day of June, 1903, leaving therein real and personal estate; that he left him surviving herself, his widow, over fifty-five years of age, and a son, Lyman D. Foster, aged thirty-one years; he also left a will which is hereunder transcribed, which was duly admitted to probate on July 9, 1903, and letters testamentary thereupon issued the same day to Lyman D. Foster, executor named therein.  On December 21, 1903, an inventory and appraisement was returned and filed, in which was set down the property herein sought to be set aside, 1760 Washington street.  This property, consisting of a lot and dwelling-house thereon, was purchased on or about February 5, 1890, and was then subject to a mortgage which was satisfied in 1892, leaving the premises now unencumbered, and of an appraised and admitted present value of $10,000; the remainder of the estate being estimated at about $150,000, net.  The property is suitable for a homestead, and from the time of its purchase was used as the residence of decedent and his family, although there never was any declaration of homestead filed thereon by either spouse.  Decedent and the applicant intermarried September 9, 1882, over twenty years prior to his decease.  At the time of his death he was about sixty-one years of age, and about forty at the date of his second marriage.  It would appear that she was then a widow, having a son, to whom he alludes in the will, and he also a son, the executor and opponent here.  The applicant claims that the premises should be set aside to her in fee as a homestead, as a part of the community property, having been acquired during coverture, and the executor opposes her application on the ground that having been purchased with funds derived from his separate estate the widow is not entitled to more than a homestead for a limited period, under section

1468 of the Code of Civil Procedure. So it would seem that the only question involved in this controversy is a simple one: Is the property described in the application community or separate? In the inventory returned by the executor, the appraisers have subscribed to the statement therein, emanating presumably from the executor, that, among other items enumerated, item 3, the Washington street parcel, is "the separate property of decedent, being property owned by him prior to September 9, 1882, with the rents, issues and profits thereof as invested to June 15, 1903," the date of his death. One of these appraisers and, judging from the intrinsic evidence and the circumstances of the appraisement, the main factor in making it up, if not the only efficient one, was Morris Marcus, who had been with the house of S. Foster & Co. since 1881, and is at present interested in the business and associated therein with opponent. Mr. Marcus is an important witness, from the fact of special familiarity with the affairs of the concern for a period antedating the marriage of decedent to the present, say about twenty-four years. As a bookkeeper and accountant he has had thirty years' training, being now forty-five years of age; so that his competency in this respect is abundantly established, if it were otherwise open to question. Another adept accountant called for opponent is Nathan A. Dodge, but he is simply an expert, while Marcus is not only that, but much more, since he is practically acquainted with the premises. There is no challenge to the correctness of the books kept by Samuel Foster, himself an accurate man of affairs, who saw that his accounts were adjusted in a business-like manner. The dependence of the opponent is upon the completeness and accuracy of these books and accounts, as he contends that the payments for the Washington street property were made out of funds owned by Samuel Foster at the date of his marriage with Mary A. Foster, or out of the rents, issues and profits thereof, and is, therefore, separate estate; and that this is clearly traceable through his books of account which show the history and origin and character of every species of his property and the nature of its mutations. It is claimed that each of the payments came direct from the rents, issues and profits of property owned by Samuel Foster before his marriage, and that

this is mathematically certain from an examination of his
books. At the date of his marriage, September 9, 1882, he
owned an interest in the steamer "Belvedere"; real estate in
Oakland; an interest in his father's estate in Massachusetts;
a paid-up life insurance policy; and the entire grocery busi-
ness of S. Foster & Co. In his will decedent makes this
statement: "I hereby declare the amount of my separate
property to be thirty-six thousand dollars." The will is
dated April 25, 1902, and the codicils April 20, 1903, and
June 6, 1903, respectively. Whether this declaration meant
his worth at the date of his marriage, or at the dates of the
will and codicil, it is evident that at the former time his
wealth might be estimated at between thirty and thirty-six
thousand, Marcus placing the value of the aggregate of the
items at $33,576.98 and Dodge at $30,842.39. The main item
was the grocery business, which was worth about $21,000, of
which he was the sole owner, and which he conducted alone
until January 1, 1888, when it was incorporated at $50,000,
he taking $40,000 of the capital stock, and associating with
him A. J. Foster, Morris Marcus and Fred H. Hersey, to
whom he loaned part of the price of their shares; the first
named took $5,000, or fifty shares, and the two others $2,500,
or twenty-five shares each; he became president and was al-
lowed a salary at the rate of $3,600 a year, which was paid
for four years, 1888, 1889, 1890 and 1891. It may here be
remarked that at the time of their marriage, Mary A. Foster
had about $4,000 in her own right, which she loaned to her
husband, and which he repaid in 1895, meantime paying in-
terest thereon. As to his method of doing business, he gave
assiduous attention to all his affairs, bestowing great energy
upon their management, and devoting all of his talents to
their development. He was a large and constant borrower
from relatives and other persons, and this practice continued
after as before the incorporation. These loans were invested
in the business, and aided in its enlargement, for it grew
fourfold; but all his other investments were fruitless or losing
ventures, during the period under consideration. Up to the
time of the incorporation the profits all went to Samuel Fos-
ter; after that event he received only his proportion, although
virtually, it may be said, he was the whole Lusiness all the

while. He used the corporation, S. Foster & Co., as his bankers and kept therewith an open, current account. Moneys, as he received them, were paid to the corporation, he receiving credit for the same, and then the concern would deposit the amount with Tallant and Company's bank; he kept no private bank account. The account of Samuel Foster with the corporation of S. Foster & Co. is a contemporaneous record, kept by and assented to by the parties themselves, and, opponent contends, it is binding upon all their representatives, including the widow of decedent and his son, the executor. It is a piece of evidence of the highest character; and in it, opponent insists, the history of the payments, on account of this piece of property, is unmistakably shown. It affords clear and convincing evidence proving the property described to be the separate estate of decedent, and it rebuts the presumption that because it was ·purchased during coverture it belongs to the community. In following separate property through its various mutations, the principles should be applied that what is shown to be separate remains such, and that the profits thereof acquire the same character; but where profits are earned by the commingling of common and separate funds so as to destroy their identity, it not appearing what proportion of profits pertained to each, such profits must be considered community. The theory of the applicant is that this case comes under the latter clause of this rule of law, because it is deducible from the books that all moneys from all sources, whether borrowed by decedent from others or deposited with him, both before and after incorporation, went into the business for business purposes, were deposited in the bank with which the house was dealing as depositor, and were used by the concern in the ordinary and general conduct of its affairs. The deductions of applicant from the evidence are that whatever Foster owned at the time of his death came as much from the profits of money that he borrowed as from the profits of the property that he had at the time of his marriage, for there is no proof of the product of either separately; no separate accounts were kept; all money was treated alike and used as a common fund out of which no one could say what particular part went to purchase any specified piece of property or to engage in any specific investment. It was not, and

could not be, earmarked. Every dollar was intermingled with every other dollar, and there was such a confusion and commingling as to warrant the court in holding that it was all community, and that all separate property had been drawn to it by reason of its being the paramount estate. Applicant contends, in brief, that it is plain, from reading the testimony, that Mr. Foster's original separate property lost its character as such; that moneys from every source went into the Tallant bank, and that it is utterly impossible to trace whether the Washington street property was bought by money derived from his salary, or from his original grocery business, or from borrowed money. It was not acquired by gift, devise or descent, but by purchase, and is, therefore, prima facie community property. The burden rests upon opponent to establish the contrary by clear and certain proof.

So far as this particular parcel of property goes, it having been acquired by purchase during coverture, it may be assumed that the rule of burden applies, but opponent claims that it is established by clear and certain proof that the purchase money for the land and dwelling came from the proceeds of the grocery business owned by decedent at the time of his marriage and from no other source, and the reason for this claim is found in the books, which show that it was only that business that afforded him any profits to employ in buying the property in question, the net result of all his other investments, during this period, showing a loss, so that if he had confined himself strictly and exclusively to the business which he owned at the time of his marriage and avoided foreign transactions down to the date indicated he would have been a gainer; as it was, however, the grocery business tided over his losses on outside investments and, in addition, left him with a large margin of profit. In answer to applicant's claim that the moneys borrowed by the decedent and his salary constituted community property, opponent declares that the books demonstrate that there never was at any time during the years at issue, and certainly not at the dates of the payments on the Washington street house, any balance of earnings or profits of borrowed money which could be applied to that purpose. Dodge, the expert, testified that there was a deficit. After the marriage of decedent to applicant, his

domestic expenses increased to such an extent as to absorb all income from compensation or profits growing out of borrowed money. This is the contention of opponent contested by the applicant, who answers that the fact remains, everything said and considered, that from the marriage of decedent to Mary A. Foster on September 9, 1882, to the date of incorporation of S. Foster & Co., November 15, 1888, Samuel Foster conducted his grocery business with a stock of merchandise which was being turned over from day to day and a vast amount of money borrowed not only from the bank, but from many of his relatives. This was the capital with which he operated; and its increase was by the use of the merchandise and the borrowed money; and there is no way in the books of discriminating the profits of one from the other, and all attempts made to trace back property to the original grocery business are merely a tracing to a conglomerate mass which was composed of the resultant obtained by the manipulation of merchandise and borrowed money. From year to year the conglomerate became more and more intermingled and the identity of each was merged in the other inextricably. This would seem to be a condition of confusion worse confounded; but it is not borne out by the books kept by decedent and the corporation of which he was the controlling owner. We are bound by the books, and they seem to show that this particular parcel of property came from what was owned by the decedent at the time of his marriage. Whatever weight may attach to the testamentary declaration of the testator in regard to his separate property, or whatever may be the motive of Lyman D. Foster in opposing this application, the result is the same. Our supreme court has laid down the doctrine that the character of the estate is not to be altered or affected by any declaration of the testator, but it is to be determined by the mode in which the property was acquired; but, in the case at bar, it does not aid the applicant, even if it were admissible, for it is an expression in the present tense and does not necessarily relate back to the time of his second marriage. Be that as it may, however, this declaration does not seem to the court to be relevant to the present issue.

In construing the accounts, the court accepts the rule of the codes which is in almost universal use, and there seems to

be no sound reason why it should not apply in this case. In reference to the testimony of the experts Marcus and Dodge, their evidence, taken as a whole, may be reconciled, and the court does not discover any substantial conflict, although there may be discrepancies in minor details. Mr. Reynolds, the adverse expert, is an accomplished accountant, but the conclusion of the court is at variance with his opinions as to the interpretation or construction of the contents of the books.

The court has given due weight to the arguments of counsel, and has closely scanned the authorities and examined the evidence with care, having in mind the remarks made by Mr. Justice McFarland in Estate of Cudworth, 133 Cal. 469, 65 Pac. 1041, in which he laments that he had to find against the widow.

In the Matter of Bauer, 79 Cal. 309, 21 Pac. 759, the supreme court adverted to the action of this trial court in indulging the presumption that the homestead was purchased with community funds as against all the evidence adduced to rebut it, and the appellate tribunal held that while it was difficult to determine what became of all the separate property of the deceased between the date of his marriage and the purchase of the homestead, and to trace his separate funds through the community funds, which were commingled so as to destroy their identity at the two banks where he had accounts, it was sufficiently clear, and the inference might fairly be deduced, that at the time the homestead was purchased decedent's interest in the business he was then engaged in was his separate property. The language of the Bauer estate is instructive in and applicable to the case at bar.

The disposition of the trial court to foster the presumption in favor of the widow is praiseworthy, but that it may be carried too far is illustrated in the estates of Bauer and Cudworth, the latter of which especially deserved a better fate than attended it in the court of last resort. The widow here, the wife for twenty-one years of Samuel Foster, might be likened to the widow in that matter, whose case, said Justice McFarland, was one of peculiar hardship; but all this court can do for her on this application is to award her a homestead for life.

THE WILL AND CODICIL.

"I, Samuel Foster, a resident of the City and County of San Francisco, State of California, being of sound and disposing mind and memory, do make, publish and declare this to be my last will and testament.

"First: I give, devise and bequeath to my wife, Mary A. Foster, the one-half of my community property, and the one-third of my separate property to which she would be entitled by law, if I died intestate.

"The other one-half of my community property, and the other two-thirds of my separate property, I give, devise and bequeath as follows:

"To my son, Lyman D. Foster, Ten Thousand Dollars.

"To my sister, Suviah L. Elder, Five Thousand Dollars.

"To my sister, Rachel A. Jacques, Five Thousand Dollars.

"To Christ's Mission, organized in New York City May 1887, Two Thousand Dollars to be applied to the uses and purposes of said Mission. All the balance to my son, Lyman D. Foster.

"I purposely omit the name of my step-son in this will.

"I hereby declare the amount of my separate property to be Thirty Six Thousand Dollars.

"I hereby appoint my son, Lyman D. Foster, executor of this my last Will and Testament, and he shall not be required to give any bonds, as such executor, and shall have full power to sell any or all of my estate, real or personal, at public or private sale with or without notice, without the order of any Court.

"Written and dated with my own hand this 25th day of April, 1902, at the City of San Francisco, State of California.

"SAMUEL FOSTER."

CODICIL.

"April 20th, 1903.

"My sister Suviah L. Elder, having died since this will was written the sum of Five Thousand Dollars bequeathed to her shall go to my niece, Mary L. Elder.

"My sister Rachel A. Jacques, having died since this will was written the sum of Five Thousand Dollars, bequeathed to her shall go to my niece, Martha F. Jacques.

"SAMUEL FOSTER."

## WHAT IS COMMUNITY PROPERTY.

### Introductory Statements.

As to Theory of Community System.—The doctrine of community property, whatever may have been its origin, has, so far as it has been adopted in the United States, been borrowed directly from the French and Spanish law. It prevails, with more or less variation, in Louisiana, Texas, New Mexico, California and several other of the western and southwestern commonwealths. The community system recognizes a relation between husband and wife, respecting their property, comparable to a partnership. Its avowed purpose is to place husband and wife on an equal footing in regard to their property rights, which the common law confessedly does not do: Meyer v. Kinzer, 12 Cal. 247, 73 Am. Dec. 538; Saul v. His Creditors, 5 Mart., N. S., 569, 16 Am. Dec. 212; Burr v. Wilson, 18 Tex. 367; Wilkinson's Heirs v. Wilkinson, 20 Tex. 237; Hall v. Hall, 41 Wash. 186, 116 Am. St. Rep. 1016, 83 Pac. 108. This laudable purpose, however, it has, as enacted and interpreted in most of the states, failed to accomplish. Thus in California the husband has practically absolute dominion over the property of the community; he can sell, mortgage, or otherwise dispose of it at pleasure, except that he may not give it away without the consent of his wife, nor dispose of more than one-half of it by will. Upon her death he takes the entire common property without administration. This leaves the wife nothing more than a mere expectancy in the common property. During the lifetime of the husband she has no protection against his disposing of or squandering the entire community estate; and upon his death she takes only one-half of the property of the community, and that as his heir, subject to the inheritance tax: Cal. Civ. Code, secs. 162-164, 1401, 1402; Spreckels v. Spreckels, 116 Cal. 339, 58 Am. St. Rep. 170, 48 Pac. 228, 36 L. R. A. 497; Cunha v. Hughes, 122 Cal. 111, 68 Am. St. Rep. 27, 54 Pac. 536; Estate of Lux, 149 Cal. 200, 85 Pac. 147; Estate of Moffitt, 153 Cal. 359, 95 Pac. 653, 1025; 1 Ross on Probate Law and Practice, 152-158. Manifestly the community law as thus interpreted recognizes no equality in property rights between husband and wife, and requires substantial alteration by the legislature and a more liberal interpretation than it has yet received from the courts before it can fulfill the promise which its name implies—a real marital community in property.

As to Tests for Determining What is Common Property.—The law declares what is community property by first stating what is separate property and then declaring that all other property belongs to the community. And, with slight modifications in some jurisdictions which presently will be considered, it may be said that property owned by either spouse at the time of the marriage, together with the rents, profits, income and increase therefrom after marriage, is and remains his or her separate estate. Moreover, all property which

comes to either spouse during coverture by gift, devise, bequest, or succession is his or her separate estate. All other property, coming to either or both husband or wife during marriage, becomes their common estate. The authorities on these propositions will be cited in their proper places in subsequent paragraphs. "During the marriage relation, the community of the spouses is, and, in the nature of things, must be, the superior and controlling entity. Its interests are paramount, and whatever tends to reduce its position must be exceptional": Yesler v. Hochstettler, 4 Wash. 349, 30 Pac. 398.

**As to Intermingling of Separate and Community Property.**—Where the separate property or funds of either spouse is so intermingled with the community that its identity is lost, the entire mass ordinarily becomes community property, since the latter is the paramount interest; but if the separate property can be traced and segregated from the community with which it has been commingled, it does not lose its character as separate estate; and when the community is inconsiderable in amount as compared with the separate property confused and blended with it, it does not draw the separate property to it: Reid v. Reid, 112 Cal. 274, 44 Pac. 564; In re Cudworth's Estate, 133 Cal. 462, 65 Pac. 1041; Robb v. Robb (Tex. Civ. App.), 41 S. W. 92; Reid v. Rochereau, Fed. Cas. No. 11,669, 2 Woods, 151. On the other hand, community property can be allowed by the husband to be so mingled with the profits of his wife's separate estate as to indicate an intention that it shall be her separate property: Diefendorff v. Hopkins, 95 Cal. 343, 28 Pac. 265, 30 Pac. 549. Where she deposits her money with him, and he mingles it with other moneys which he holds, and then at her request purchases land which he pays for out of the fund in his hands and has it conveyed to her, the land becomes her separate estate: Moore v. Jones, 63 Cal. 12.

### Property Acquired Before Marriage.

**In General.**—The first exception to the general rule in favor of the community is, that property acquired by a man or woman before marriage remains his or her separate property after marriage: Cal. Civ. Code, secs. 162, 163; Selover v. American Russian Commercial Co., 7 Cal. 266; Spalding v. Godard, 15 La. Ann. 277; Imhof v. Imhof, 45 La. Ann. 706, 13 South. 90; Cartwright v. Cartwright, 18 Tex. 626; Akin v. Jefferson, 65 Tex. 137; Welder v. Lambert, 91 Tex. 510, 44 S. W. 281; Hillen v. Williams, 25 Tex. Civ. App. 268, 60 S. W. 997. The increase, income, profits and rents from such property during coverture are, in most of the states, also separate property: See post, pp. 54-57. And property acquired by the exchange of separate property, or by purchase with funds belonging to the separate estate of one of the spouses, continues to be separate estate: See post, p. 47.

**In Case Title is not Consummated Until After Marriage.**—Where an unmarried person acquires the equitable title to property, it does not lose its character as his or her separate estate by the fact that the legal title is not acquired or the conveyance consummated until

after marriage: Lawson v. Ripley, 17 La. 238; Barbet v. Langlois, 5 La. Ann. 212; Succession of Wade, 21 La. Ann. 343; Medlenka v. Downing, 59 Tex. 32. This rule has been applied in a number of cases where the acquisition of property was from the United States government: See post, pp. 58-60. Land conveyed to a woman before her marriage is her separate property, although a quitclaim deed thereof reciting a money consideration is executed to her after her marriage by the same grantor. Such deed does not affect the title previously conveyed nor change the character of the property from separate to community: Maguire v. De Fremery, 76 Cal. 401, 18 Pac. 410. But where a man, before his marriage, was in possession without right of a tract of land, and after marriage he conveyed a part thereof to the rightful owners, to whom he gave up possession, and they, induced thereby, conveyed a portion of the land to him, the property so acquired was community: Pancoast v. Pancoast, 57 Cal. 320. A naked right of partnership possession in land before marriage is not such a right as to give one of the partners an equity to which the subsequently acquired title to a part of the land could attach, as his separate estate, after marriage: Estate of Boody, 113 Cal. 682, 45 Pac. 858. In this case the court in the course of its opinion said: "The doctrine of Harris v. Harris, 71 Cal. 314, 12 Pac. 274, and In re Lamb, 95 Cal. 397, 30 Pac. 568, has no application to the circumstances of this case. In both those cases legal steps had been initiated by the filing of application, prior to the marriage, to procure title to the land from the government. This fact was held to create an equity to which the legal title, when acquired, would relate back, and constitute the land separate estate, although the title was not actually acquired until after marriage. Here no such fact exists. Nothing but the naked right of possession, and that a joint one in the partnership of Boody & Heath, existed in any of the lands here involved. This certainly was not such a right as to give one of the partners an equity to which the subsequently acquired title to a portion of the land so held could attach." Where after marriage a man purchased with the common funds and took a deed of land which he had occupied without title before marriage, it was held in Johnson v. Johnson, 11 Cal. 200, 70 Am. Dec. 774, that the property became community.

**Property Held by Adverse Possession in Texas** without paper title is not "acquired" until the limitation period has run; and, in case the wife of the occupant dies before that time, there is no community in the land: Bishop v. Lusk, 8 Tex. Civ. App. 30, 27 S. W. 306; Gafford v. Foster, 36 Tex. Civ. App. 56, 81 S. W. 63.

### Property Acquired After Marriage.

**By Efforts of Either or Both Spouses.**—The fruits of the industry of husband and wife fall into the community. Indeed, it is the basic principle of the community system that whatever is acquired through the efforts of the husband and wife shall be their common property. All

property acquired during marriage by the efforts of the wife alone or of the husband alone, or by their joint efforts, is community and not separate property, unless it has come by gift, devise, bequest or succession, or unless it has sprung from the rents, profits, or increase of the separate property of one of the spouses: Fennell v. Drinkhouse, 131 Cal. 447, 82 Am. St. Rep. 361, 63 Pac. 734; Otto v. Long, 144 Cal. 144, 77 Pac. 885; Succession of Manning, 107 La. 456, 31 South. 862; Picotte v. Cooley, 10 Mo. 312; White v. Lynch, 26 Tex. 195; Edwards v. Brown, 68 Tex. 329, 4 S. W. 380, 5 S. W. 87; Abbott v. Wetherby, 6 Wash. 507, 36 Am. St. Rep. 176, 33 Pac. 1070. Said the supreme court of Nevada in Lake v. Lake, 18 Nev. 361, 4 Pac. 711, 7 Pac. 774: "We are satisfied it is not necessary to prove that property is, in fact, the product of the joint efforts of the husband and wife in order that it may be declared community estate. If it is acquired after marriage by the efforts of the husband alone, but not by gift, devise or descent, or by exchange of his individual property, or from the rents, issues or profits of his separate estate, it belongs to the community. Such property is common, although the wife neither lifts a finger nor advances an idea in aid of her husband. She may be a burden and a detriment in every way, or she may absent herself from the scene of his labors, know nothing of his business, and do nothing for him; still it is common. On the other hand, property acquired by either spouse in any one of the ways mentioned in the statute—that is to say, by gift, devise or descent, or by exchange of individual property, or coming from the rents, issues or profits of separate property—belongs to him or her, as the case may be, and the other has no more right to share it than a total stranger."

By Conveyance to Husband or Wife.—Property acquired by purchase during coverture is ordinarily presumed to vest in the community: Meyer v. Kinzer, 12 Cal. 247, 73 Am. Dec. 538; Scott v. Ward, 13 Cal. 458; Fisher v. Gordy, 2 La. Ann. 762; Johns v. Race, 18 La. Ann. 105; Succession of Planchet, 29 La. Ann. 520; Parker v. Chance, 11 Tex. 513; Smith v. Strahan, 16 Tex. 314, 67 Am. Dec. 622; Cox v. Miller, 54 Tex. 16. This is true regardless of whether the conveyance is made to the wife or to the husband. When a conveyance is made to her, it is presumed that the consideration is paid from the community and that the property becomes a part of the common estate: Hart v. Robertson, 21 Cal. 346; Schuyler v. Broughton, 70 Cal. 282, 11 Pac. 719; Gwynn v. Dierssen, 101 Cal. 563, 36 Pac. 103; Andrew v. Bradley, 10 La. Ann. 606; Forbes v. Forbes, 11 La. Ann. 326; State v. Gaffery, 12 La. Ann. 265; Clark v. Norwood, 12 La. Ann. 598; Shaw v. Hill, 20 La. Ann. 531, 96 Am. Dec. 420; Pope v. Foster, 24 La. Ann. 521; Richardson v. Chevalley, 26 La. Ann. 551; Burns v. Thompson, 39 La. Ann. 377, 1 South. 913; Cooke v. Bremond, 27 Tex. 457, 86 Am. Dec. 626; Zorn v. Tarver, 45 Tex. 519; Augustine v. State (Tex. Cr. App.), 23 S. W. 794. When a deed is made to a married woman, the presumption that the property is community is not rebutted by the fact that the consideration named

is nominal: Wedel v. Herman, 59 Cal. 507; Swink v. League, 6 Tex. Civ. App. 309, 25 S. W. 807. And when a conveyance is made to her for a money consideration, as well as love and affection, the estate is presumed to belong to the community: Tustin v. Faught, 23 Cal. 237. When a conveyance is made to a married man, the presumption is also indulged that the property becomes community and not his separate estate: Rowley v. Rowley, 19 La. 557; Succession of Fortin, 10 La. Ann. 739; Breaux v. Carmouche, 15 La. Ann. 588; Hanover Fire Ins. Co. v. Shrader, 11 Tex. Civ. App. 255, 31 S. W. 1100, 32 S. W. 344; Short v. Short, 12 Tex. Civ. App. 86, 33 S. W. 682. This is true where land is conveyed to a husband on the consideration that he support the grantor for life: Byars v. Byars, 11 Tex. Civ. App. 565, 32 S. W. 925; but in case of land conveyed to him by his parents without consideration to enable him to qualify on his father's bond, his wife acquires no community interest: Crenshaw v. Harris, 16 Tex. Civ. App. 263, 41 S. W. 391.

These presumptions, as will be more fully considered in a subsequent part of this note, are not conclusive and may be overthrown by competent proof; they are indulged only in the absence of evidence to the contrary. And in California the rule of presumption in the case of the wife has been modified, as will be hereafter pointed out.

By Exchange or Purchase with Common Property.—Property purchased with community funds, or procured in exchange for common property, of course belongs to the community; and the fact that it is taken in the name of one only of the spouses raises no presumption that it is his or her separate estate: Sharp v. Zeller, 110 La. 61, 34 South. 129; Presidio Min. Co. v. Bullis, 68 Tex. 581, 4 S. W. 860; Schwartzman v. Cabell (Tex. Civ. App.), 49 S. W. 113. That property is taken in the name of the wife, and is paid from her personal earnings after marriage, does not take it out of the community: Knight v. Kaufman, 105 La. 35, 29 South. 711. Land acquired during the existence of a second marriage, through the exchange of community property of the first marriage, does not become community property of the second marriage: Haring v. Shelton (Tex. Civ. App.), 114 S. W. 389.

By Purchase with Community and Separate Funds.—Since property purchased with separate funds is separate property, and property purchased with community funds is common property, it follows that property purchased in part with community and in part with separate funds is community property to the extent it is paid for from common·funds, and separate property to the extent it is paid for from separate funds: Jackson v. Torrence, 83 Cal. 521, 23 Pac. 695; Love v. Robertson, 7 Tex. 6, 56 Am. Dec. 41; Braden v. Gose, 57 Tex. 37; Parker v. Coop, 60 Tex. 111; Cleveland v. Cole, 65 Tex. 402; Smith v. Bailey, 66 Tex. 553, 1 S. W. 627; Conner v. Hawkins, 66 Tex. 639, 2 S. W. 520; Letot v. Peacock (Tex. Civ. App.), 94

S. W. 1121; Clardy v. Wilson, 24 Tex. Civ. App. 196, 58 S. W. 52; Heintz v. Brown, 46 Wash. 387, 123 Am. St. Rep. 937, 90 Pac. 211. But in Louisiana it is held that land purchased in the name of the wife, and partly paid for with her paraphernal funds under her administration, and partly with community funds, falls into the community: Burns v. Thompson, 39 La. Ann. 377, 1 South. 913; although it is said that she becomes a creditor of the community for the amount she invests: Reid v. Rochereau, 2 Woods, 151, Fed. Cas. No. 11,669.

By Exchange or Purchase with Separate Property.—Property acquired in exchange for the separate property of the husband or the wife, or property acquired by purchase from the separate funds of either of them, becomes the separate property of the spouse whose separate money or separate property was used to acquire the same. The change or transmutation does not destroy the separate character of the property so long as it can be identified. This rule is applied to an exchange of lands in Sanchez v. Grace M. E. Church, 114 Cal. 295, 46 Pac. 2; Newsom v. Adams, 3 La. 231; and to a purchase of property by a wife in Oaks v. Oaks, 94 Cal. 66, 29 Pac. 330; Stokes v. Bailey, 62 Tex. 299; Hall v. Levy, 31 Tex. Civ. App. 360, 72 S. W. 263; Sparks v. Taylor (Tex. Civ. App.), 87 S. W. 740; Schneider v. Fowler, 1 White & W. Civ. Cas. Ct. App. (Tex.), sec. 856; Ratto v. Holland, 2 Wills. Civ. Cas. Ct. App. (Tex.), sec. 469; Freeburger v. Gazzam, 5 Wash. 772, 32 Pac. 732; Webster v. Thorndyke, 11 Wash. 390, 39 Pac. 677; Hester v. Stine, 46 Wash. 469, 90 Pac. 594; and to a purchase of property by a married man in Estate of Higgins, 65 Cal. 407, 4 Pac. 389; Estate of Boody, 119 Cal. 402, 51 Pac. 634; In re Burrow's Estate, 136 Cal. 113, 68 Pac. 488; Love v. Robertson, 7 Tex. 6, 56 Am. Dec. 41.

A somewhat different rule prevails in Louisiana, for it seems (although some of the early cases appear to lend themselves to a different interpretation: Stroud v. Humble, 2 La. Ann. 930; Succession of Vanrensellaer, 6 La. Ann. 803; Metcalf v. Clark, 8 La. Ann. 286; Ruys v. Babin, 14 La. Ann. 95; Fleytus v. Fleytus, 15 La. Ann. 62; Succession of Pinard v. Holton, 30 La. Ann. 167; Miller v. Handy, 33 La. Ann. 160) that property purchased in that state with separate funds ordinarily falls into the community (Comeau v. Fontenot, 19 La. 406; Tally v. Heffner, 29 La. Ann. 583; Drumm v. Kleinman, 31 La. Ann. 124; Durham v. Williams, 32 La. Ann. 162), but a charge will exist in favor of the separate estate against the community for the amount of the purchase: Joffrion v. Bordelon, 14 La. Ann. 618; Succession of Merrick, 35 La. Ann. 296; Moore v. Stancel, 36 La. Ann. 819. Property in that state bought by the husband and paid for out of his own funds, under circumstances showing a clear intention to buy for his separate account, is regarded as exclusively his: Tanner v. Robert, 5 Mart., N. S., 255; Young v. Young, 5 La. Ann. 611; Bass v. Larche, 7 La. Ann. 104; but it has

been held that when he buys property in his name, intending it as an investment of his separate funds, to be held for his individual account rather than that of the community, it is essential that some indication of this intention and of the character of the funds used should be given in the act of purchase: Succession of Burke, 107 La. 82, 31 South. 391. A wife or widow in Louisiana, claiming as her separate estate property purchased during the community, must prove the paraphernal character of the funds used in the purchase, her separate administration of those funds, and their investment in the property in question: Stauffer v. Morgan, 39 La. Ann. 632, 2 South. 98; Succession of Lewis, 45 La. Ann. 833, 12 South. 952; Rouyer v. Carroll, 47 La. Ann. 76, 17 South. 292; Succession of Burke, 107 La. 82, 31 South. 391. But where a woman who has been deserted by her husband purchases land with her paraphernal funds, it is held her separate property, to which she can convey title after the dissolution of the marriage: Reinach v. Levy, 47 La. Ann. 963, 17 South. 426.

Where a man purchases real estate with the separate funds of his wife, but takes the conveyance to himself, the land becomes, as between him and her, the separate property of the wife: Rich v. Tubbs, 41 Cal. 34; Hunt v. Matthews (Tex. Civ. App.), 60 S. W. 674; Oaks v. West (Tex. Civ. App.), 64 S. W. 1033; but in Louisiana, property purchased by the husband in his own name, and paid for with the separate funds of his wife, falls into the community, but she retains a claim against it for the funds so paid: Brown v. Cobb, 10 La. 172; Stokes v. Shackleford, 12 La. 170; Dominguez v. Lee, 17 La. 295; Comeau v. Fontenot, 19 La. 406; Rousse v. Wheeler, 4 Rob. 114; Wood v. Harrell, 14 La. Ann. 61; Le Blanc v. Le Blanc, 20 La. Ann. 206. This Louisiana rule, that if a purchase is made by a man in his own name, the property, though purchased with his wife's money, belongs to the community, has been applied to an exchange of properties: United States v. Bouligny, 42 Fed. 111.

In Texas, where a deed is made to a married woman and deferred payments are made by her, the property will be her separate estate; but if a deed is made to the husband, a payment made by her at the time of the purchase raises a resulting trust in her favor and vests the equitable title in her: Strnad v. Strnad, 29 Tex. Civ. App. 124, 68 S. W. 69. Where real estate is either paid for by the husband with the separate funds of his wife, or is purchased for her by him in order to discharge a debt which he owes her, the property becomes her separate estate: Mitchell v. Mitchell, 84 Tex. 303, 19 S. W. 477; Parker v. Fogarty, 4 Tex. Civ. App. 615, 23 S. W. 700.

**By Deed to Wife by Husband or at His Direction.**—A deed from a husband to his wife, whether of his own or of community property, vests the land in her as her separate estate: Swain v. Duane, 48 Cal. 358; Hamilton v. Hubbard, 134 Cal. 603, 65 Pac. 321, 66 Pac. 860; Alferitz v. Arrivillaga, 143 Cal. 646, 77 Pac. 657; Jones v.

Humphreys, 39 Tex. Civ. App. 644, 88 S. W. 403; Stewart v. Klein-schmidt (Wash.), 97 Pac. 1105. And where a deed is made by a third person to a married woman at her husband's request, the property is presumed to go to her separate estate: Hamilton v. Hubbard, 134 Cal. 603, 65 Pac. 321, 66 Pac. 860; Alferitz v. Arrivillaga, 143 Cal. 646, 77 Pac. 657. Said the court in the last case: "All presumptions are in favor of the conveyances to the wife. They are presumed to have been made for a consideration paid by the wife, or, if we concede that the consideration was paid by the husband, it will be presumed that the property was intended as a gift to the wife as her separate property." "Where property purchased with community funds was conveyed to the wife by direction of the husband, and with the intent that it should become her separate property, it has many times been held that the conveyance operated as a gift from him to her: Peck v. Brummagim, 31 Cal. 440, 89 Am. Dec. 195; Woods v. Whitney, 42 Cal. 358; Higgins v. Higgins, 46 Cal. 259; Read v. Rahm, 65 Cal. 343, 4 Pac. 111; Jackson v. Torrence, 83 Cal. 521, 23 Pac. 695. In the case last cited it is said: 'There is no evidence that he [the husband] was indebted to anyone at the time, and if he was free from debt he had the right to give her [his wife] the property, and could make the gift effectual by simply directing the conveyance to be made to her.' So, also, it has been held that when a husband himself conveys property to his wife, whether it is his separate property or community property, the conveyance operates to vest the title in the wife as her separate estate: Burkett v. Burkett, 78 Cal. 310, 12 Am. St. Rep. 58, 20 Pac. 715, 3 L. R. A. 781; Taylor v. Opperman, 79 Cal. 468, 21 Pac. 869; Oaks v. Oaks, 94 Cal. 66, 29 Pac. 330; In re Lamb's Estate, 95 Cal. 397, 30 Pac. 568."

**By Intermingling Separate and Community Funds.**—Where separate property has, by investment, or otherwise, undergone changes and mutations, it is indispensable, in order to maintain its separate character, that the spouse so claiming shall trace and identify it, and rebut the presumption that property acquired during marriage belongs to the community. If the identity of the property has been lost, then it loses its character as separate estate: Brown v. Lockhart, 12 N. M. 10, 71 Pac. 1086; Glasscock v. Hamilton, 62 Tex. 143; Smith v. Bailey, 66 Tex. 553, 1 S. W. 627; Hamilton-Brown Shoe Co. v. Lastinger (Tex. Civ. App.), 26 S. W. 924.

**By Mortgage or Credit of Separate Estate.**—Money borrowed or property purchased with it during coverture, by either spouse, ordinarily belongs to the community: Northwestern & P. Hypotheek Bank v. Rauch, 7 Idaho, 152, 61 Pac. 516; Strong v. Eakin, 11 N. M. 107, 66 Pac. 536; Main v. Scholl (Wash.), 57 Pac. 800. It has been affirmed that money borrowed by a married woman to pay taxes on her separate estate is not her separate property: Grevils v. Smith, 29 Tex. Civ. App. 150, 68 S. W. 291; that money borrowed on a

mortgage of her separate estate belongs to the community: Canfield v. Moore, 16 Tex. Civ. App. 472, 41 S. W. 718; Heintz v. Brown, 46 Wash. 387, 123 Am. St. Rep. 937, 90 Pac. 211; that merchandise purchased by her with money borrowed on the security of her separate estate is community property: Heidenheimer v. McKeen, 63 Tex. 229; that property purchased by her on credit belongs to the community: Epperson v. Jones, 65 Tex. 425; that property purchased by her to be paid for out of the proceeds of crops grown on her land (which in that state are common property) belongs to the community: Cleveland v. Cole, 65 Tex. 402; that land purchased partly in funds of the community and partly on credit is common property: Moore v. Moore, 28 Tex. Civ. App. 600, 68 S. W. 59; that where money procured by a mortgage in which the husband joined, on her separate estate, is loaned and a note taken therefor, the note and money are presumed to be community: Somes v. Ainsworth (Tex. Civ. App.), 67 S. W. 468; that when a wife contributes separate funds to the original capital stock of a mercantile firm, and the stock of goods is replenished from time to time, purchases being made for cash and on credit, the interest in the partnership held in her name becomes common property: Middlebrook v. Zapp, 73 Tex. 29, 10 S. W. 732. That a conveyance to her in consideration of her assuming a debt secured by a vendor's lien on the land does not make the property her separate estate, since she cannot acquire a separate interest on credit: Harrison v. Mausur-Tibbetts Impl. Co., 16° Tex. Civ. App. 630, 41 S. W. 842.

By Separate Funds and in Part on Credit.—But in this last case it is said: "No case has been cited by appellants, nor have we been able to find any, where the wife can acquire an interest in land on a credit when no part of the purchase money has been paid therefor out of her separate means. There are several cases by our supreme court holding that where the consideration for land purchased is in part paid out of the separate means of the wife, and the balance to be paid at some future date, the wife acquires an interest in said land to the extent of the cash paid therefor, and, if the deferred payments are made out of her separate means she acquires a title to all of said land; but if the deferred payments should be paid out of the property other than that of her separate means, to that extent it would be community property, subject to the payment of the husband's debts: Ullman v. Jasper, 70 Tex. 446, 7 S. W. 763; Parker v. Fogarty, 4 Tex. Civ. App. 615, 23 S. W. 700; Schuster v. Bauman Jewelry Co., 79 Tex. 179, 23 Am. St. Rep. 327, 15 S. W. 259. In the last-named case Judge Gaines, in discussing the rights of the wife under such circumstances, says: 'A wife's equity in such cases arises from the actual investment of her separate money, or the transfer of her separate property'": Harrison v. Mansur-Tibbetts Impl. Co., 16 Tex. Civ. App. 630, 41 S. W. 842. The equities of the wife in such cases are recognized in Goddard v. Reagan, 8 Tex. Civ. App. 272, 28 S. W. 352.

And in Parker v. Fogarty, 4 Tex. Civ. App. 615, 23 S. W. 700, where it is held that when the price of land is paid partly from the wife's separate funds and partly by notes in which her husband joins pro forma, with the intention that they are to be paid from her estate, the deed being made to her but not disclosing that the land is her separate estate, the land so acquired is not subject to levy by creditors of the husband with notice, the court said: "In the case of Ullmann v. Jasper, 70 Tex. 446, 7 S. W. 763, it was held that where land is purchased for the separate estate of his wife, partly on time, even though the note of the husband was given for the deferred payment, if it was understood that payment was to be made out of the separate means of the wife, and the transaction was in good faith, the land became her separate estate. We might multiply authorities upon this point, but we deem it unnecessary. The right of a married woman to buy property for part cash and part notes, where the payments are to be made out of her separate estate, is now too firmly established to be called in question": Parker v. Fogarty, 4 Tex. Civ. App. 615, 23 S. W. 700.

Generally, where land is purchased in the name of the wife during coverture, partly by borrowed money and partly by her separate funds, it should be considered community property to the extent to which borrowed money is used and separate property to the extent her separate funds are employed: Schuyler v. Broughton, 70 Cal. 282, 11 Pac. 719; Northwestern etc. Bank v. Rauch, 7 Idaho, 152, 61 Pac. 516. But in Washington real estate purchased with money borrowed by a married woman and secured by a mortgage on her separate estate, but paid by a sale of part of the land purchased, has been held community property: Yesler v. Hochstettler, 4 Wash. 349, 30 Pac. 398. In deciding this case the Washington court used this language: "In Schuyler v. Broughton, 70 Cal. 282, 11 Pac. 719, it was held that where the purchase price of land conveyed to the wife was paid by her in part from her separate funds and in part with money borrowed upon a mortgage of the same land, that proportion of the land paid for with the borrowed money was community property and the remainder was her separate property. The opinion by McKee, Judge, implied that if the mortgage had been upon existing separate property of the wife, the decision might have been different. But in Heidenheimer v. McKeen, 63 Tex. 229, the precise point was at issue, and was decided, as we think, according to the better rule. There merchandise was bought with money borrowed by the wife upon a deed of trust of her real estate, and it was said: 'Suppose that the debt incurred in securing the loan had been paid without any resort whatever to the deed of trust, it would not be insisted, we apprehend, that the money or merchandise either became the separate property of the wife, simply because her real estate had been used as a security for the debt. If the money had been borrowed upon the faith of a deed of trust given upon the separate property of the husband, certainly neither the money

nor the merchandise would for that reason become his separate property. In either case the status of the property is to be determined at the time the loan is secured.' In this case (continued the Washington court referring to the case before it for decision), the land purchased with the borrowed money paid for itself, and a large profit in land and money besides. It was a speculation purely personal, in which the energy, skill and business prudence of Mrs. Yesler certainly were greater factors than the credit given by the mortgage of her land. But these mental forces, whether of husband or wife, are servants of the community, and their products are its property, to be shared in equally by the members of the community": Yesler v. Hochstettler, 4 Wash. 349, 30 Pac. 398. See Heintz v. Brown, 46 Wash. 387, 123 Am. St. Rep. 937, 90 Pac. 211.

The case of Schuyler v. Broughton, 70 Cal. 282, 11 Pac. 719, is commented upon in the subsequent case of Flournoy v. Flournoy, 86 Cal. 286, 21 Am. St. Rep. 29, 24 Pac. 1012, where it is decided that if a married woman purchases property which is at the time intended to be her separate estate, and her husband loans her money to make a partial payment, he does not, nor does the community, acquire an interest in the property proportionate to the money so loaned by him, nor to any other extent, but he is simply a creditor of his wife to the amount of the loan; and if a married woman purchases property, paying therefor partly out of her separate estate and partly with moneys borrowed on the faith of her existing property, and secured by a mortgage thereon in which and the note which it is given to secure the husband also joins, the whole is her separate estate: See, also, Heintz v. Brown, 46 Wash. 387, 123 Am. St. Rep. 937, 90 Pac. 211.

### Property Acquired by Gift, Devise or Succession.

Property Acquired by Devise or Descent.—All property acquired by a husband or wife during coverture by devise, bequest or descent, since it cannot be said to result from their joint efforts, becomes his or her separate property: Cal. Civ. Code, secs. 162, 163; Dickenson v. Owen, 11 Cal. 71; Racouillat v. Sansevain, 32 Cal. 376; Savenat v. Le Breton, 1 La. 520; Allen v. Allen, 6 Rob. 104, 39 Am. Dec. 553; Robin v. Castille, 7 La. 292; Hicks v. Pope, 8 La. 554, 28 Am. Dec. 142; Turnbull v. Towles' Exr., 10 La. 254; Dominguez v. Lee, 17 La. 295; Gravenberg v. Savoie, 8 La. Ann. 499; Decuir v. Lejeune, 15 La. Ann. 569; Troxler v. Colley, 33 La. Ann. 425; Vavasseur v. Mouton, 34 La. Ann. 1044; Hershberger v. Blewett, 46 Fed. 704. Land inherited by a widow from her husband is separate property as against the creditors of her second husband: Nelson v. Frey (Tex. Civ. App.), 16 S. W. 250.

Property Acquired by Gift Other than Testamentary.—Likewise, all property, whether real or personal, acquired by gift other than testamentary by a husband or wife during the existence of the marriage relation is his or her separate estate: Cal. Civ. Code, secs. 162, 163;

Bessie v. Earle, 4 Cal. 200; Hamilton v. Hubbard, 134 Cal. 603, 65 Pac. 321, 66 Pac. 860; Savenat v. Le Breton, 1 La. 520; Gates v. Legendre, 10 Rob. 74; Lemmon v. Clark, 36 La. Ann. 744; Owen v. Tankersley, 12 Tex. 405; Bradley v. Love, 60 Tex. 472; McClelland v. McClelland (Tex. Civ. App.), 37 S. W. 350. The fact that there are restrictions and qualifications in a grant to a husband does not deprive it of its character as a donation: Scott v. Ward, 13 Cal. 458; Noe v. Card, 14 Cal. 576. And land conveyed to a married person as a gift does not become community, although the donor intended it as a gift to both husband and wife: Stockstill v. Bart, 47 Fed. 231. But a deed of gift to a husband and wife, intended as a joint gift, invests each with an undivided one-half of the land as their separate property: King v. Summerville (Tex. Civ. App.), 80 S. W. 1050, affirmed in Summerville v. King, 98 Tex. 332, 83 S. W. 680. Where a husband gives his wife the proceeds of their dairy, property purchased therewith becomes her separate estate: Dority v. Dority, 30 Tex. 216, 70 S. W. 338, judgment affirmed 71 S. W. 950.

Property paid for by a husband out of community funds, and directed to be conveyed to his wife as a gift, becomes her separate property: Peck v. Brumagim, 31 Cal. 441, 89 Am. Dec. 195; Jackson v. Torrence, 83 Cal. 521, 23 Pac. 695; or, as expressed in Arkle v. Beedie, 141 Cal. 459, 74 Pac. 1033, property purchased with community funds with the express purpose on the husband's part of making a gift to the wife, and deeded to her alone as her separate property, vests in her as such.

Where a wife gave the income of her separate property to her husband "to do what he pleased with," the gift became his separate estate: Estate of Cudworth, 133 Cal. 462, 65 Pac. 1041; and a deed to a married woman "to have and to hold and enjoy and dispose of the said land in any and every manner she may think proper for her own use, benefit and behoof," conveys the property to her as her separate estate: Laufer v. Powell, 30 Tex. Civ. App. 604, 71 S. W. 549.

Where a deed by husband to wife shows on its face that the land is a gift, this is sufficient to make it her separate property: Callahan v. Houston, 78 Tex. 494, 14 S. W. 1027; and where a mother made a deed to her children "for and in consideration of the natural love and affection which I have and bear to my said children, and for the further sum of five dollars, to me in hand paid at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, have granted, bargained, sold and conveyed," it was held that the deed upon its face imported a gift, and conveyed a separate estate to the grantees: Peck v. Vandenberg, 30 Cal. 11. Judge Sawyer took the view in this case that parol evidence was admissible to show that the deed was a gift. In Mahon v. Barnett (Tex. Civ. App.), 45 S. W. 24, it was affirmed a deed to a husband, reciting a consideration, may be shown to be a gift to him, and therefore a part of his separate estate.

**Property Perfected by Adverse Possession.**—A married woman may perfect in herself a title by adverse possession which originated in a gift or devise to her. Hence an executed parol gift made to her by her sisters who put her in possession of the property, and her adverse possession thereof, with payment of taxes thereon, for more than five years, and a judgment in her favor quieting her title against the administrators of the deceased sisters, are sufficient to prove title in her to the premises as her separate property: Siddall v. Haight, 132 Cal. 320, 64 Pac. 410.

**Pension Money Received by a Veteran** of the Civil War is regarded as a donation from the government, and as belonging to his separate estate, although not received until after his marriage; and its character is not changed into community property by the fact that he invests it in land: Johnson v. Johnson (Tex. Civ. App.), 23 S. W. 1022.

### Rents, Issues and Profits of Separate Property.

**In Some States are Separate Property.**—The rents, issues, profits, income and increase of separate property, in some of the states where the community law prevails, are separate property also; they do not, whether the separate property from which they arise belongs to the husband or wife, fall into the community: Civ. Code, secs. 162, 163; George v. Ransom, 15 Cal. 322, 76 Am. Dec. 490; Lake v. Bender, 18 Nev. 361, 4 Pac. 711, 7 Pac. 74; Harris v. Van De Vanter, 17 Wash. 489, 50 Pac. 50. In the last case cited this rule was applied to the increase of cattle. To the same effect see Thorn v. Anderson, 7 Idaho, 421, 63 Pac. 592. In Arizona property purchased by a married woman with the rents and profits of her separate estate are not subject to any of the husband's marital rights: Woffenden v. Charauleau, 2 Ariz. 91, 11 Pac. 117. "All the property which can be shown by satisfactory testimony to belong to the separate estate of the wife, whether real, personal or mixed, and all the rents, issues, profits and increase thereof, whether the same be the fruit of trade and commerce, of loans and investments, or the spontaneous production of the soil, or wrested from it by the hand of industry, is, under the constitution, sacred to the use and enjoyment of the wife, and cannot be held to answer for the debts of the husband": Lewis v. Johns, 24 Cal. 98, 85 Am. Dec. 49.

**In Some States are Community Property.**—In some states, as a general rule, the rents, profits and issues of the separate property of a married person fall into the community, on the theory that they are acquired by the joint efforts of the husband and wife: Lambert v. Franchebois, 16 La. 1; Rowley v. Rowley, 19 La. 557; Webb v. Peet, 7 La. Ann. 92; Fisher v. Gordy, 2 La. Ann. 762; Glenn v. Elam, 3 La. Ann. 611; Trezevant v. Holmes, 38 La. Ann. 146; Succession of Webre, 49 La. Ann. 1491, 22 South. 390; De Barrera v. Frost, 39 Tex. Civ. App. 544, 88 S. W. 476. This rule appears not to have applied to profits derived from the use of paraphernal funds under the control of the wife: Pinard v. Holten, 30 La. Ann. 167; nor to the in-

crease of slaves: Frederic v. Frederic, 10 Mart., N. S., 188; Gonor v. Gonor, 11 Rob. 526; Deshautels v. Fontenot, 6 La. Ann. 689; McIntyre v. Chappell, 4 Tex. 187. And where a man, before marrying, conveys property on the condition that there shall be paid to him annually a specified amount from the income, the annuity is his separate estate: Krohn v. Krohn, 5 Tex. Civ. App. 125, 23 S. W. 848.

Rents and Crops from the Separate Real Property of a married woman in Texas have been held to belong to the community notwithstanding the expenses incident thereto were not borne by the husband or his separate estate; they are not regarded as "increase of land": De Blane v. Lynch, 23 Tex. 25; Forbes v. Dunham, 24 Tex. 611; Cleveland v. Cole, 65 Tex. 402; Seligson v. Staples, 1 White & W. Civ. Cas. Ct. App. (Tex.), sec. 1071; Conner v. Hawkins, 66 Tex. 639, 2 S. W. 520; Hayden v. McMillan, 4 Tex. Civ. App. 479, 23 S. W. 430; Schepflin v. Small, 4 Tex. Civ. App. 493, 23 S. W. 432; De Barrera v. Frost, 39 Tex. Civ. App. 544, 88 S. W. 476. So has lumber sawed at a mill out of logs from land by slaves owned by her as separate property: White v. Lynch, 26 Tex. 195; and so has brick made from her separate land and without expense to her husband: Craxton v. Ryan, 3 Wills. Civ. Cas. Ct. App., sec. 367.

The Increase of Animals Belongs, in Texas and Louisiana, to the community: Bonner v. Gill, 5 La. Ann. 629; Howard v. York, 20 Tex. 670; Bateman v. Bateman, 25 Tex. 270; although the animals are the separate property of the husband or wife: Blum v. Light, 81 Tex. 414, 16 S. W. 1090; Wolford v. Melton, 26 Tex. Civ. App. 486, 63 S. W. 543. In other states the rule is different: Thorn v. Anderson, 7 Idaho, 421, 63 Pac. 592; Harris v. Van De Vanter, 17 Wash. 489, 50 Pac. 50. But the enhancement of the value of animals owned by a woman at the time of her marriage, by reason of a natural growth, their care by the husband, and sustenance from the community property, is not an increase, within the meaning of the foregoing rule, which falls into the community. The word "increase," as used in this connection, has reference to an increase of progeny: Stringfellow v. Sorrells, 82 Tex. 277, 18 S. W. 689.

Interest on Funds Belonging to the Separate Estate of a married woman, in those jurisdictions where the rents, issues and income of separate property fall into the community, is regarded as community property: Braden v. Gose, 57 Tex. 37; Cabell v. Menczer (Tex. Civ. App.), 35 S. W. 206; Parrish v. Williams (Tex. Civ. App.), 53 S. W. 79; although it seems that interest due from the husband on money borrowed from his wife and agreed to be paid to her for its use belongs to her separate estate: Hamilton-Brown Shoe Co. v. Whitaker, 4 Tex. Civ. App. 380, 23 S. W. 520; Hamilton-Brown Shoe Co. v. Kellum (Tex. Civ. App.), 23 S. W. 524.

Profits Arising from the Investment of a wife's separate funds in a commercial or mercantile business are community property in those states where the rents and profits of the separate estate of a married

person fall into the community: Epperson v. Jones, 65 Tex. 425; Smith v. Bailey, 66 Tex. 553, 1 S. W. 627; Claflin v. Pfeiffer, 76 Tex. 469, 13 S. W. 483. But the courts announcing this rule have refused to extend it to cases where profits have accrued through the sale or exchange by a husband of land belonging to the separate estate of the wife, and have held that such profits are "increase of land," and hence her separate property: Evans v. Purrinton, 12 Tex. Civ. App. 158, 34 S. W. 350. Said the court in Cabell v. Menczer (Tex. Civ. App.), 35 S. W. 206: "Profits arising from the investment of money in a mercantile business are community property: Epperson v. Jones, 65 Tex. 425; Smith v. Bailey, 66 Tex. 553, 1 S. W. 627. While these principles are well settled by our decisions, we have been unable to find any decision of our supreme court, nor have counsel for appellants cited any, which goes to the extent of holding, as contended for, that the profits made in the sale or exchange of land in the manner as shown by the facts in this case become community property. When the separate property is invested in real estate, and the same is sold at a profit, and the proceeds arising therefrom are reinvested in real estate, which is also resold, the same is separate property; and it is immaterial how often mutations take place, as its changed condition can be traced and identified by clear and satisfactory proof. The term 'increase of land,' as used in the statute, evidently must include the profits arising from the sale of land. If not, it is meaningless": Cabel v. Menczer (Tex. Civ. App.), 35 S. W. 206.

Profits Arising from a Business carried on during coverture ordinarily belongs to the community: Lewis v. Lewis, 18 Cal. 654; Youngworth v. Jewell, 15 Nev. 45; Heidenheimer v. Felker, 1 White & W. Civ. Cas., Tex. App., sec. 362; and in Louisiana and Texas this is true, although the business belonged to the wife before marriage (Mehnert v. Dietrich, 36 La. Ann. 390), or although the capital is her separate estate: Middlebrook v. Zapp, 73 Tex. 29, 10 S. W. 732; Mitchell v. Mitchell, 80 Tex. 101, 15 S. W. 705.

A Prize Drawn on a Lottery Ticket bought by a wife with her separate money has in Texas been held not acquired by gift, devise or descent, and therefore not her separate property, but the community property of herself and husband: Dixon v. Sanderson, 72 Tex. 359, 13 Am. St. Rep. 801, 10 S. W. 535.

The Proceeds Arising from the Sale or Exchange of Separate Property becomes the separate property of the spouse whose property is sold or exchanged: Beaudry v. Felch, 47 Cal. 183; Stewart v. Pickard, 10 Rob. (La.) 18; Succession of Hale, 26 La. Ann. 195; Chappell v. McIntyre, 9 Tex. 161; German Ins. Co. v. Hunter (Tex. Civ. App.), 32 S. W. 344; Cabell v. Menczer (Tex. Civ. App.), 35 S. W. 206. A note given to a married woman in payment of land of her separate estate is her separate property: Hamilton v. Brooks, 51 Tex. 142; Morris v. Edwards, 1 White & W. Tex. Civ. Cas., sec. 548; and if the note is delivered up to the maker by her husband and another taken

to his order, this second note is also her separate property: Rose v. Houston, 11 Tex. 524, 62 Am. Dec. 478. It is not essential that separate property be preserved in specie or in kind to maintain its character as such; it will remain separate property, although it undergoes mutations and changes, so long as it can be traced and identified: Rose v. Houston, 11 Tex. 324, 62 Am. Dec. 478.

### Earnings of Husband or Wife.

In General.—The earnings of both spouses while living together, the wife's as well as the husband's, are, as a rule, community property. This, indeed, is according to the fundamental principles of the community law: Washburn v. Washburn, 9 Cal. 475; Finnigan v. Hibernia Savings & Loan Soc., 63 Cal. 390; Martin v. Southern Pac. Co., 130 Cal. 285, 62 Pac. 515; Fennell v. Drinkhouse, 131 Cal. 447, 82 Am. St. Rep. 361, 63 Pac. 734; Knight v. Kaufman, 105 La. 35, 29 South. 711; Succession of Manning, 107 La. 456, 31 South. 862; Adams v. Baker, 24 Nev. 375, 55 Pac. 362; Cline v. Hackbarth, 27 Tex. Civ. App. 391, 65 S. W. 1086; Abbott v. Wetherby, 6 Wash. 507, 36 Am. St. Rep. 176, 33 Pac. 1070; Yake v. Pugh, 13 Wash. 78, 52 Am. St. Rep. 17, 42 Pac. 528. Thus it has been affirmed that a claim by a married woman for services rendered a decedent as nurse constitutes community property: Smith v. Furnish, 70 Cal. 424, 12 Pac. 392. And property purchased by a married woman with her earnings becomes community, unless the husband intended to give her the proceeds of her earnings, in which case it would be her separate estate: Johnson v. Burford, 39 Tex. 242. If articles of personalty are purchased with money earned by a wife under an agreement with her husband, that such money should be her separate property, and such articles are brought into the house and taken possession of by her as her separate property with the consent of her husband, such acts amount to a gift from the husband to the wife, and constitute such articles her separate property: Yake v. Pugh, 13 Wash. 78, 52 Am. St. Rep. 17, 42 Pac. 528. A donation in remuneration for services rendered by a married woman to the donor is not a part of the community, nor can real property so received be disposed of by the husband: Fisk v. Flores, 43 Tex. 340. Where a husband gives his wife the proceeds of her dairy, property purchased therewith may be set aside as her separate estate: Dority v. Dority, 30 Tex. Civ. App. 216, 70 S. W. 950, affirmed in 96 Tex. 215, 71 S. W. 950, 60 L. R. A. 941.

In Case of Separation.—The earnings of a wife while living apart from her husband are her separate property: Loring v. Stuart, 79 Cal. 201, 21 Pac. 651; Greve v. Echo Oil Co. (Cal. App.), 96 Pac. 904; Queen Ins. Co. v. May (Tex. Civ. App.), 35 S. W. 829. When he leaves her and lives in another county on account of domestic infelicity, without expressing any intention to return, property acquired by her earnings while continuing to reside at their former place of residence is acquired while she is living separate from him,

within the meaning of the foregoing rule: Boring v. Stuart, 79 Cal. 201, 21 Pac. 651.

**In Case of Express Agreement.**—The earnings of a married woman may be her separate property by agreement with her husband: Greve v. Echo Oil Co. (Cal. App.), 96 Pac. 904; Vansickle v. Wells, Fargo & Co., 105 Fed. 16. Thus the personal earnings acquired by a woman in keeping boarders and in doing work as a dressmaker, under an agreement with her husband that the money so acquired should belong to her alone, are her separate property as against his creditors; and if articles of personalty are purchased therewith, they too belong to her separate estate: Yake v. Pugh, 13 Wash. 78, 52 Am. St. Rep. 17, 42 Pac. 528. But a mere general agreement between husband and wife that whatever she earns shall belong to her, which has no reference to any particular business or employment, has been held insufficient to impress her earnings with the character of separate property: Sherlock v. Denny, 28 Wash. 170, 68 Pac. 452.

### Property Acquired from the Government.

**By Gift or Donation.**—Land granted by the government as a gift or donation to a married person becomes his or her separate estate: Wilson v. Castro, 31 Cal. 420; Rouquier's Heirs v. Rouquier's Exrs., 5 Mart., N. S., 98, 16 Am. Dec. 186, and note; Wilkinson v. American Iron Mountain Co., 20 Mo. 122. Thus a donation under the act of 1837, granting to soldiers who served at the battle of San Jacinto, when made to a married man, does not fall into the community but becomes his separate property: Ames v. Hubby, 49 Tex. 705. Land patented under a warrant for military service is regarded as a gift, and does not become community property, under the Washington statutes: Hatch v. Ferguson, 68 Fed. 43, 15 C. C. A. 201, 29 U. S. App. 651, 33 L. R. A. 759. Land granted by virtue of a bounty certificate for services rendered by the patentee in the Texas army before his marriage is, notwithstanding the certificate is not issued until after the marriage, his separate property: Parker v. Newberry, 83 Tex. 428, 18 S. W. 815. See, further, the note to Ahern v. Ahern, 96 Am. St. Rep. 922.

**For Valuable Consideration.**—But where a land certificate is issued to a volunteer for services rendered in the Texas war for independence under a contract with the government, the property belongs to the community, for it is acquired by onerous title—that is, a title created by valuable consideration: Barrett v. Spence, 28 Tex. Civ. App. 349, 67 S. W. 921; Kircher v. Murray, 54 Fed. 617, affirmed 60 Fed. 48, 8 C. C. A. 448. And the general rule is that property acquired from the government for a valuable consideration by a husband is presumed to belong to the community: Lake v. Lake, 52 Cal. 428; Morgan v. Lones, 78 Cal. 58, 20 Pac. 248; Mills v. Brown, 69 Tex. 244, 6 S. W. 612; Duncan v. Bickford, 83 Tex. 322, 18 S. W. 598; Booth v. Clark, 34 Tex. Civ. App. 315, 78 S. W. 392; Kromer v. Friday, 10 Wash. 621, 39 Pac. 229, 32 L. R. A. 671. See, further, the note to Ahern v. Ahern, 96 Am. St. Rep. 916.

**By Title Initiated Before Marriage.**—Where an unmarried person acquires the equitable title to a tract of public land, the land does not lose its character as separate property by the fact that the patent is not issued to him until after his marriage: Barbet v. Langlois, 5 La. Ann. 212; Lawson v. Ripley, 17 La. 238; Gardner v. Burkhart, 4 Tex. Civ. App. 590, 23 S. W. 709. Hence it is that where a woman files a homestead claim under the laws of the United States, settles upon and improves the property for four years, and then marries, the land is her separate property, notwithstanding the patent is not issued until after her marriage, since the patent is only the legal evidence of the title already vested in her: Forker v. Henry, 21 Wash. 235, 57 Pac. 811; and an unmarried woman who is an occupant of land under the "townsite act" has an equitable interest which is her separate property, although the patent is not issued until after her marriage and the necessary funds to obtain the title are advanced by her husband: Morgan v. Lones, 80 Cal. 317, 22 Pac. 253. Where an unmarried woman, after acquiring an initiatory right to pre-empt public land, marries, and during her marriage pays the government price for the land and receives a patent therefor, the property thus acquired becomes her separate estate; and this result follows whether the money paid to the government belongs to the community or is acquired by her in consideration of the sale of a part of the land: Harris v. Harris, 71 Cal. 314, 12 Pac. 274. See, also, the note to Ahern v. Ahern, 96 Am. St. Rep. 920.

**By Title Initiated During Coverture.**—From the rule of the preceding paragraph that if either spouse prior to the marriage acquired an equitable right to property which was perfected after marriage, the status of the property follows the right of the spouse who had the equitable interest before marriage, it follows that title initiated during coverture may be community estate although not perfected until after the dissolution of the marriage. Thus where a man during marriage enters a homestead under the United States law and conforms to the prescribed requirements, the property is regarded as belonging to the community although he does not make final proof or obtain a patent until after the death of his wife: Brown v. Fry, 52 La. Ann. 58, 26 South. 748; Creamer v. Briscoe (Tex. Civ. App.), 109 S. W. 911; Ahern v. Ahern, 31 Wash. 334, 96 Am. St. Rep. 912, 71 Pac. 1023; Cox v. Tompkinson, 39 Wash. 70, 80 Pac. 1005. Said the court in Crochet v. McCamant, 116 La. 1, 114 Am. St. Rep. 538, 40 South. 474: "The acquisition of the land by the homesteader under the federal homestead law dates from the entry. The occupying and cultivating of the land for five years, and the making of the final proofs, are merely conditions imposed upon the title; and the accomplishment of these conditions has a retroactive effect to the date of the entry. Consequently the homestead becomes the joint property of the husband and the wife, if the community of acquets and gains existed between them at the time of the entry, even though the proofs were made, and the certificate and the patent issued, only after the

dissolution of the community by the death of the wife": See, also, the note to Ahern v. Ahern, 96 Am. St. Rep. 919.

But in order that a right to public land, initiated during coverture but not consummated until the dissolution of the marriage, shall fall into the community, it is necessary that the right should have proceeded beyond a mere occupancy of the land or possessory right, and arisen to the dignity of ownership: Labish v. Hardy, 77 Cal. 327, 19 Pac. 531; Richard v. Moore, 110 La. 435, 34 South. 593; Simpson v. Otis (Tex. Civ. App.), 109 S. W. 940. And in Washington, when one makes a homestead entry and dies before completing the full residence period necessary under the homestead law, leaving a widow who completes the period of residence, makes proof and procures a patent, the land becomes her separate property: Cunningham v. Krutz, 41 Wash. 190, 83 Pac. 109, 7 L. R. A., N. S., 967. This decision perhaps modifies the law of that state as declared in the decisions cited in the preceding paragraph. In Louisiana, if land is entered in the name of the wife during marriage, but the patent is issued after the community is dissolved by a judgment, the land is presumed to be an acquisition of the community, since the title to government land dates from the certificate and not from the patent: Simiem v. Perrodin, 35 La. Ann. 931.

**By Acquisition of Timber Lands.**—In Gardner v. Port Blakely Mill Co., 8 Wash. 1, 35 Pac. 402, the supreme court of Washington decided that land acquired by a married man under the act of Congress providing for the sale of timber lands is his separate property, which can be alienated without the consent of his wife. The reasons assigned for this conclusion were that husband and wife are each permitted to make an entry of one hundred and sixty acres under the provisions of the act, and that the entryman is required to make oath that he has made no other application under the act, that he does not apply to purchase the same on speculation but in good faith to appropriate it to his own exclusive use and benefit, and that he has not directly or indirectly made any agreement with any person by which the title should inure in whole or in part to the benefit of any person except himself. It has subsequently been held that the fact that community funds are used to purchase a timber claim which is the husband's separate property does not give the wife an interest in or lien upon the property itself: James v. James (Wash.), 97 Pac. 1113.

**By Acquisition of Mining Property.**—According to Jacobson v. Bunker Hill etc. Min. Co., 3 Idaho, 126, 28 Pac. 396, it is held that mining property acquired by a married man under the laws of the United States is community property. But the supreme court of Washington has disapproved the Idaho decision, and held that a locator's interest in a mining claim is his separate property: Phoenix Min. etc. Co. v. Scott, 20 Wash. 48, 54 Pac. 777, citing Black v. Elkhorn Min. Co., 163 U. S. 445, 16 Sup. Ct. 1101, 41 L. Ed. 221, which was decided subsequently to the Idaho case. A locator of a mining claim has no such

interest therein after a conveyance and abandonment thereof that the community interest of his wife attaches: McAllister v. Hutchinson, 12 N. M. 111, 75 Pac. 41.

By Acquisition Under Colonization Law.—According to Hood v. Hamilton, 33 Cal. 698, land granted under the Mexican colonization laws to married men became their separate property. But according to the Texas decisions lands granted to married men or married women under the colonization laws of 1823 and 1839, and subsequent enactments, become community property, on the theory that they were acquired by onerous title: Yates v. Houston, 3 Tex. 443; Burris v. Wideman, 6 Tex. 231; Edwards v. James, 7 Tex. 372; Parker v. Chance, 11 Tex. 513; Wilkinson's Heirs v. Wilkinson, 20 Tex. 237; Babb v. Carroll, 21 Tex. 765; Simmons v. Blanchard, 46 Tex. 266; Rudd v. Johnson, 60 Tex. 91; Manchaca v. Field, 62 Tex. 135. As to the effect of the death of the wife before the issuance of a patent, see Webb v. Webb, 15 Tex. 274; Cannon v. Murphy, 31 Tex. 405; Caudle v. Welden, 32 Tex. 355; Porter v. Chronister, 58 Tex. 53; Norton v. Cantagrel, 60 Tex. 538.

Proceeds of Life Insurance Policy.—Where premiums on a policy of insurance on the life of a married man are paid out of the community funds, the proceeds of the policy belong to the community: In re Stans' Estate (Cal.), Myr. Prob. 5; Succession of Buddig, 108 La. 406, 32 South. 361; Martin v. Moran, 11 Tex. Civ. App. 509, 32 S. W. 904. And where a man pays the first one-third of the amount of the premiums on his life insurance policy out of his earnings before marriage, and the remainder from his earnings after marriage, one-third of the policy belongs to the separate estate and the remainder to the community property: In re Webb's Estate (Cal.), Myr. Prob. 93. The rights under a policy of life insurance taken out by an unmarried man belong to his separate estate, and do not fall into the community on his subsequent marriage; but the community arising under his marriage is entitled to have payments of the premiums thereon made by it reimbursed as expenditures for such separate estate: In re Moseman's Estate, 38 La. Ann. 219. The proceeds of a policy taken out by a husband on his life in favor of his wife does not become a part of the community but belongs to her: Succession of Bofenschen, 29 La. Ann. 711; Succession of Hearing, 26 La. Ann. 326. In Crowe v. Dobbel, 105 Cal. 350, 38 Pac. 957, it is decided that an insurance policy on the life of a man payable to his wife, her executors, administrators or assigns, is her separate property, and, upon her death before his, he becomes entitled thereto only as her heir. The proceeds of a policy on the life of a wife in favor of the husband has been held to belong to his separate estate, although the premiums thereon were paid from the community: Martin v. McAllister, 94 Tex. 567, 63 S. W. 624, 56 L. R. A. 585. Where a benefit certificate of the brother of a married woman was made payable to her, not as a gift, but in consideration of the care and support by the woman and her husband of the broth-

er's children, and in satisfaction of an indebtedness of the brother to the husband, and on the payment of future assessments by the husband upon the certificate, and the proceeds of the certificate were invested in real estate in her name, the property so acquired became community: Bollinger v. Wright, 143 Cal. 292, 76 Pac. 1108.

Damages Recovered for Personal Injuries.—The right to recover damages for personal injuries sustained by either spouse, and the damages recovered therefor, as a general rule, belong to the community property: McFadden v. Santa Ana etc. R. R. Co., 87 Cal. 464, 25 Pac. 681, 11 L. R. A. 252; Neale v. Depot Ry. Co., 94 Cal. 425, 29 Pac. 954; Martin v. Southern Pac. Co., 130 Cal. 285, 62 Pac. 515; Fournet v. Morgan's etc. Steamship Co., 43 La. Ann. 1202, 11 South. 541; Gallagher v. Bowie, 66 Tex. 265, 17 S. W. 407; Loper v. Western Union Tel. Co., 70 Tex. 689, 8 S. W. 600; Bohan v. Bohan (Tex. Civ. App.), 56 S. W. 959; San Antonio v. Wildenstein (Tex. Civ. App.), 109 S. W. 231. But in Louisiana, owing to a change in the statute, a claim for damages for personal injuries to a married woman does not now fall into the community: Martin v. Derenbecker, 116 La. 495, 40 South. 849. Damages for personal injuries sustained by a man after he has separated from his wife with the intention not to live with her again are community property: Ligon v. Ligon, 39 Tex. Civ. App. 392, 87 S. W. 838.

A claim for unliquidated damages against a carrier for indignities suffered by a woman before marriage is her separate property, and it does not fall into the community on her subsequent marriage: St Louis etc. Ry. Co. v. Wright, 33 Tex. Civ. App. 80, 75 S. W. 565.

Damages which a wife recovers against a saloon-keeper for an illegal sale of liquor to her husband, under the civil damage act, is her separate property and belongs exclusively to her: Hahn v. Goings, 22 Tex. Civ. App. 576, 56 S. W. 217.

Damages recovered by parents for the death of their child are a part of the community property: Galveston etc. Ry. Co. v. Hughes, 22 Tex. Civ. App. 134, 54 S. W. 264. But the damages allowed to heirs for the death of a wife and mother have no existence prior to the death, and are not community property: Redfield v. Oakland etc. Ry. Co., 110 Cal. 277, 42 Pac. 822.

### Presumption for or Against Community Property.

In General.—As a general rule, property acquired during coverture by either the husband or the wife, and property in their possession during marriage (Schuler v. Savings & Loan Soc., 64 Cal. 397, 1 Pac. 479; Dimmick v. Dimmick, 95 Cal. 323, 30 Pac. 547; In re Boody's Estate, 113 Cal. 682, 45 Pac. 858; Repplier v. Gow's Syndics, 1 La. 474; Bostwick v. Gasquet, 11 La. 534; Succession of Pratt, 12 La. Ann. 457; Grayson v. Sandford, 12 La. Ann. 646; Lacroix v. Derbigny, 18 La. Ann. 27; Van Wickle v. Violet, 30 La. Ann. 1106; Stauffer v. Morgan, 39 La. Ann. 632, 2 South. 98; Duruty v. Musacchia, 42 La. Ann. 357, 7 South. 555; Succession of Barry, 48 La. Ann. 1143, 20 South. 656; Succession of

Manning, 107 La. 456, 31 South. 862; Strong v. Eakin, 11 N. M. 107, 66 Pac. 539; Brown v. Lockhart, 12 N. M. 10, 71 Pac. 1086; Huston v. Curl, 8 Tex. 239, 58 Am. Dec. 110; Smith v. Boquet, 27 Tex. 507; Box v. Word, 65 Tex. 159; Mitchell v. Mitchell, 80 Tex. 101, 15 S. W. 705; McKinney v. Nunn, 82 Tex. 44, 17 S. W. 516; Allardyce v. Hambleton, 96 Tex. 30, 70 S. W. 76; Blackwell v. Mayfield (Tex. Civ. App.), 69 S. W. 659; Thayer v. Clarke (Tex. Civ. App.), 77 S. W. 1050, affirmed, Clark v. Thayer, 98 Tex. 142, 81 S. W. 1274; Hoopes v. Mathias, 40 Tex. Civ. App. 121, 89 S. W. 36; Keyser v. Clifton (Tex. Civ. App.), 50 S. W. 957; Woodland Lumber Co. v. Link, 16 Wash. 72, 47 Pac. 222; Hanna v. Reeves, 22 Wash. 6, 60 Pac. 62; Allen v. Chambers, 22 Wash. 304, 60 Pac. 1128; Hill v. Gardner, 35 Wash. 529, 77 Pac. 808; O'Sullivan v. O'Sullivan, 35 Wash. 481, 77 Pac. 806); or in their possession at the time of its dissolution by death or divorce (Montegut v. Trouart, 7 Mart., O. S., 361; Nores v. Carraby, 5 Rob. 292; Babin v. Nolan, 6 Rob. 508; Succession of Baum, 11 Rob. 314; Lake v. Bender, 18 Nev. 361, 4 Pac. 711, 7 Pac. 74; Heidenheimer v. Loring, 6 Tex. Civ. App. 560, 26 S. W. 99; Bryn v. Kleas, 15 Tex. Civ. App. 205, 39 S. W. 980; McCelvey v. Cryer (Tex. Civ. App.), 37 S. W. 175; Edelstein v. Brown (Tex. Civ. App.), 95 S. W. 1126; Stein v. Mentz, 42 Tex. Civ. App. 38, 94 S. W. 477; Smith v. Smith (Tex. Civ. App.), 91 S. W. 815; Cope v. Blount (Tex. Civ. App.), 91 S. W. 615), is presumed to belong to the community.

In Case of Separate Conveyance to Husband or Wife.—This presumption applies where property is purchased by or conveyed to the husband (Bass v. Larche, 7 La. Ann. 104; Murphy's Heirs v. Jury, 39 La. Ann. 785, 2 South. 575; Hall v. Toussaint, 52 La. Ann. 1763, 28 South. 304; Succession of Muller, 106 La. 89, 30 South. 329; Osborn v. Osborn, 62 Tex. 495; Nixon v. Wichita Land & Cattle Co., 84 Tex. 408, 19 S. W. 560; Schneider v. Sellers, 25 Tex. Civ. App. 226, 61 S. W. 541; Burleson v. Alvis, 28 Tex. Civ. App. 51, 66 S. W. 235; Dormitzer v. German Sav. & Loan Soc., 23 Wash. 132, 62 Pac. 862); and it also applies where property is purchased or conveyed to the wife (Alverson v. Jones, 10 Cal. 9, 70 Am. Dec. 689; Pixley v. Huggins, 15 Cal. 127; Mott v. Smith, 16 Cal. 533; Adams v. Knowlton, 22 Cal. 283; McDonald v. Badger, 23 Cal. 393, 83 Am. Dec. 123; Peck v. Brummagin, 31 Cal. 440, 89 Am. Dec. 195; Ingersoll v. Truebody, 40 Cal. 603; Alferitz v. Arrivillaga, 143 Cal. 646, 77 Pac. 657; Stowell v. Tucker, 7 Idaho, 312, 62 Pac. 1033; Fisher v. Gordy, 1 La. Ann. 762; Provost v. Delahoussaye, 5 La. Ann. 610; De Young v. De Young, 6 La. Ann. 786; Webb v. Peet, 7 La. Ann. 92; Huntington v. Legros, 18 La. Ann. 126; Block v. Melville, 22 La. Ann. 147; Sulstrang v. Betz, 24 La. Ann. 295; De Sentmanat v. Soule, 33 La. Ann. 609; Gogreve v. Dehon, 41 La. Ann. 244, 6 South. 31; Prior v. Gideens, 50 La. Ann. 216, 23 South. 337; Jordy v. Muir, 51 La. Ann. 55, 25 South. 550; Parker v. Chance, 11 Tex. 513; Moffatt v. Sydnor, 13 Tex. 628; Wells v. Cockrum, 13 Tex. 127; Smith v. Strahan, 16 Tex. 314, 67 Am. Dec. 622; Castro v. Illies, 22 Tex. 479, 73 Am. Dec. 277; Coats

v. Elliott, 23 Tex. 606; Cooke v. Bremond, 27 Tex. 457, 86 Am. Dec. 626; Stanley v. Epperson, 45 Tex. 644; Epperson v. Jones, 65 Tex. 425; Claflin v. Pfeiffer, 76 Tex. 469, 13 S. W. 483; Oppenheimer v. Robinson, 87 Tex. 174, 27 S.. W. 95; Collins v. Turner, 1 White & W. Civ. Cas. Ct. App., sec. 517; Stephenson v. Chappell, 12 Tex. Civ. App. 296, 33 S. W. 880, 36 S. W. 482; Ballew v. Casey (Tex. Civ.), 9 S. W. 189; Swink v. League, 6 Tex. Civ. App. 309, 25 S. W. 807; Sinsheimer v. Kahn, 6 Tex. Civ. App. 143, 24 S. W. 533; Tompkins v. Williams, 7 Tex. Civ. App. 602, 25 S. W. 158; Sweeney v. Taylor Bros., 41 Tex. Civ. App. 365, 92 S. W. 442; Flannery v. Chidgey, 33 Tex. Civ. App. 638, 77 S. W. 1034; Yesler v. Hochstettler, 4 Wash. 349, 30 Pac. 398); although the presumption is probably stronger where the conveyance is made to the husband than where it is made to the wife: See the note to Cooke v. Bremond, 86 Am. Dec. 637.

In California the statute was amended in 1889 so as to change the presumption in favor of married women; and the law now provides in this state that "whenever any property is conveyed to a married woman by an instrument in writing, the presumption is that the title is thereby vested in her as her separate property": Cal. Civ. Code, sec. 164; Nilson v. Sarment, 153 Cal. 524, 126 Am. St. Rep. 91, 96 Pac. 315. This amendment to the statutory law is not retrospective in its operation: Lewis v. Burns, 122 Cal. 358, 55 Pac. 132; Booker v. Castillo (Cal.), 98 Pac. 1067.

In Case of Joint Conveyance to Husband and Wife.—Where property is conveyed jointly to a husband and wife, it is, unless the statute provides otherwise, presumed to be community estate, the same as where it is conveyed to the husband or to the wife separately: Jordan v. Fay, 98 Cal. 264, 33 Pac. 95. "All property acquired during the marriage is presumed to belong to the community, whether the conveyance is to the husband or wife, or both, and the onus of proving that it is separate property of either is on the party asserting it": Wallace v. Campbell, 54 Tex. 87; Morris v. Hastings, 70 Tex. 26, 8 Am. St. Rep. 570, 7 S. W. 649; King v. Summerville (Tex. Civ. App.), 80 S. W. 1050; Summerville v. King, 98 Tex. 332, 83 S. W. 680. But in California the statute was amended in 1889, and now provides: "Whenever any property is conveyed to a married woman by an instrument in writing, the presumption is that the title is thereby vested in her as her separate property. And in case the conveyance be to such married woman and to her husband, or to her and any other person, the presumption is that the married woman takes the part conveyed to her as tenant in common, unless a different intention is expressed in the instrument, and the presumption in this section mentioned is conclusive in favor of a purchaser or encumbrancer in good faith and for a valuable consideration": Cal. Civ. Code, sec. 164. As to other persons, the presumption may be rebutted by evidence that the entire property is community: Bollinger v. Wright, 143 Cal. 292, 76 Pac. 1108. This amendment to the California statute the supreme

court has refused to give a retrospective operation so as to disturb titles already vested: Jordan v. Fay, 98 Cal. 264, 33 Pac. 95.

**Evidence to Overcome Presumption.**—Presumptions in favor of the community property are indulged only in the absence of direct evidence on the question: Letot v. Peacock (Tex. Civ. App.), 94 S. W. 1121. And when indulged they are ordinarily not conclusive, but yield to satisfactory evidence that the property is in fact the separate estate of one of the spouses by reason of having been acquired by him or her in one of the ways which impress it with the character of separate property: See the note to Cooke v. Bremond, 86 Am. Dec. 636-640; Hoeck v. Greif, 142 Cal. 119, 75 Pac. 670; Succession of Rogge, 50 La. Ann. 1220, 23 South. 933; Fortier v. Barry, 111 La. 776, 35 South. 900; Baker v. Baker, 55 Tex. 577; Hames v. State, 46 Tex. Cr. 562, 81 S. W. 708; York v. Hilger (Tex. Civ. App.), 84 S. W. 1117; Weymouth v. Sawtelle, 14 Wash. 32, 44 Pac. 109. "This invariable presumption," said Justice Field, "which attends the possession of property by either spouse during the existence of the community, can be overcome only by clear and certain proof that it was owned by the claimant before marriage, or acquired afterward in one of the particular ways specified in the statutes, or that it is property taken in exchange for or in the investment or as the price of the property so originally owned or acquired. The burden of proof must rest with the claimant of the separate estate. Any other rule would lead to infinite embarrassment, confusion and fraud": Meyer v. Kinzer, 12 Cal. 247, 73 Am. Dec. 538.

Courts have said that the presumption in favor of community property can be overcome only by "clear and convincing," or by "clear and cogent," or by "clear and conclusive" proof: Lewis v. Burns, 122 Cal. 358, 55 Pac. 132; Rowe v. Hibernia etc. Loan Soc., 134 Cal. 403, 66 Pac. 569; Riebli v. Husler (Cal.), 69 Pac. 1061; Bachino v. Coste, 35 La. Ann. 570; Neher v. Armijo, 9 N. M. 325, 54 Pac. 236; Love v. Robertson, 7 Tex. 6, 56 Am. Dec. 41; Coats v. Elliott, 23 Tex. 606. These expressions, however, are misleading, in that they imply more cogent proof than the law demands. It would be more accurate to say that the presumption may be overcome "by a preponderance of evidence": Strong v. Eakin, 11 N. M. 107, 66 Pac. 539; Blackwell v. Mayfield (Tex. Civ. App.), 69 S. W. 659. "The assertion of an exception (to the rule that property purchased during marriage is community) merely requires the production of proof either that the conveyance was in fact a lawful gift, or that the consideration was furnished by husband or wife individually out of funds or property which he or she was entitled, under the law, to hold as separate property. Whatever satisfies the court or the jury of the truth of one or the other of these probative facts will authorize the finding of the ultimate fact that the subject of the conveyance was separate, and not common, property; and thus the presumption will be overcome": Weymouth v. Sawtelle, 14 Wash. 32, 44 Pac. 109. "Clearly it was never

intended by this court," to quote from Freese v. Hibernia Loan etc. Soc., 139 Cal. 392, 73 Pac. 172, "to lay down a rule requiring demonstration in such matters—that is, such a degree of proof as, excluding possibility of error, produces absolute certainty. Such proof is never required. Generally moral certainty is required, or that degree of proof which produces conviction in an unprejudiced mind, and evidence which ordinarily produces such conviction is satisfactory. . . . . We are of the opinion that it is incumbent on the party seeking to overthrow the presumption of community property to do no more than to produce such legal evidence as, under all the circumstances of the particular case, would ordinarily produce conviction in an unprejudiced mind, and that in the face of such evidence, the naked presumption, unsupported by any testimony must fall. In considering whether or not such a degree of proof has been attained, we have the right to consider such presumptions and inferences as are authorized by the law of evidence." To the same effect see Neher v. Armijo, 9 N. M. 325, 54 Pac. 236; Mitchell v. Mitchell, 80 Tex. 101, 15 S. W. 705.

Effect of Recitals in Deed.—A recital in a deed to a married woman that the consideration is paid out of her separate funds, or that the land is conveyed to her as her separate estate, ordinarily rebuts the presumption that the property falls into the community, and prima facie makes it her separate estate. Such recitals, however, are not conclusive, but only prima facie of the separate character of the estate: Morrison v. Wilson, 13 Cal. 494, 73 Am. Dec. 593; McComb v. Spangler, 71 Cal. 418, 12 Pac. 347; Sanchez v. Grace M. E. Church, 114 Cal. 295, 46 Pac. 2; McCutcheon v. Purinton, 84 Tex. 603, 19 S. W. 710; Evans v. Purinton, 12 Tex. Civ. App. 158, 34 S. W. 350; Kahn v. Kahn (Tex.), 58 S. W. 825; Clardy v. Wilson, 27 Tex. Civ. App. 49, 64 S. W. 489; Newman v. Newman (Tex. Civ. App.), 86 S. W. 635; Yesler v. Hochstettler, 4 Wash. 349, 30 Pac. 398; except where the statute otherwise provides, as apparently it now does in California in the case of bona fide purchasers and encumbrancers: Cal. Civ. Code, sec. 164. And in Louisiana it seems that such recitals alone do not even prima facie make the property the separate estate of the wife as against creditors and forced heirs: See the note to Shaw v. Hill, 96 Am. Dec. 424; Kerwin v. Hibernia Ins. Co., 35 La. Ann. 33; Bartels v. Souchon, 48 La. Ann. 783, 19 South. 941. But a husband who has been a party to an authentic act by which it is declared that the wife purchases with her separate paraphernal funds, and for her separate benefit, is estopped from contradicting the verity of such recitals unless he first prove that such recitals were embodied in the act through fraud, error, or violence: Maguire v. Maguire, 40 La. Ann. 579, 4 South. 492; Succession of Bellande, 42 La. Ann. 241, 7 South. 535; Jordy v. Muir, 51 La. Ann. 55, 25 South. 550.

Constructive Notice to Purchasers.—In Texas the fact that a conveyance expressing a valuable consideration was taken in the name of a married woman imposes no burden upon a purchaser from the

husband of inquiring as to equities which she may have in the land, but he is protected if he buys in ignorance of her claim to it as her separate property, though the rule would be otherwise in the event of recitals in the deed showing that the consideration was paid from her separate estate, or that the purchase was designed for her separate use and benefit: Cooke v. Bremond, 27 Tex. 457, 86 Am. Dec. C26, and note; French v. Strumburg, 52 Tex. 92; Parker v. Coop, 60 Tex. 111. In California, however, persons who purchase from a married man real estate deeded to his wife for a money consideration, during coverture, do so at their peril. The record of the deed to the wife is notice to all the world that the land may be her separate estate, and is sufficient to put purchasers on inquiry: Ramsdell v. Fuller, 28 Cal. 37, 87 Am. Dec. 103; Peck v. Vandenberg, 30 Cal. 11; McComb v. Spangler, 71 Cal. 418, 12 Pac. 347; Jackson v. Torrence, 83 Cal. 521, 23 Pac. 695. By a parity of reasoning, persons purchasing from a married woman real estate deeded to her for a money consideration do so at their peril, notwithstanding the deed recites that the property is for her separate use and benefit, for such recital makes the property only prima facie her separate estate: McComb v. Spangler, 71 Cal. 418, 12 Pac. 347. The California statute now provides "that all other property acquired after marriage by either husband or wife, or both, is community property; but whenever any property is conveyed to a married woman by an instrument in writing, the presumption is that the title is thereby vested in her as her separate property. In case the conveyance be to such married woman and to her husband, or to her and any other person, the presumption is that the married woman takes the part conveyed to her, as tenant in common, unless a different intention is expressed in the instrument, and the presumption in this section mentioned is conclusive in favor of a purchaser or encumbrancer in good faith and for a valuable consideration": Cal. Civ. Code, sec. 164.